[-No. 53690-7-I.   Division One.   March 7, 2005.]

MICHAEL E. MAZON, *Appellant*, v. STEVEN P. KRAFCHICK ET AL.,
*Respondents*.

208

*Charles N. Berry III*, for appellant.

*Joel E. Wright* and *Alison H. Killebrew* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondents.

¶1 AGID, J. — Attorney Michael Mazon sued his cocounsel, Steven Krafchick, after they settled a malpractice claim brought against them by their mutual client. Krafchick had failed to serve the complaint on time. Mazon's primary claim was for $325,000, the contingent fee he expected to get had he and Krafchick successfully pursued their client's lawsuit. The trial court ruled that cocounsel could not sue one another for lost prospective fees. We agree and hold that it would create a conflict with an attorney's primary duty to his client to allow cocounsel to sue each other for lost or reduced prospective fees, regardless of the theory of recovery.

## FACTS

¶2 On July 9, 1999, Tahar Layouni was electrocuted in a workplace accident and suffered from fibromyalgia and chronic pain as a result. Layouni hired Michael Mazon on a contingency fee basis to sue the parties responsible for the accident. With Layouni's consent, Mazon brought Steven Krafchick into the case as cocounsel because Krafchick specialized in fibromyalgia and chronic pain cases. In late July 2000, Mazon and Krafchick signed a joint venture agreement providing that they would split evenly all costs and any fee collected.

¶3 In January 2002, Mazon and Krafchick agreed that Mazon would draft the complaint and provide names and addresses for service of process, and Krafchick would file and serve the summons and complaint. Mazon completed his designated tasks, and Krafchick filed the summons and complaint on May 15, 2002, three days before the statute of limitations expired. Based on the filing date, the 90-day rule[1] required that Krafchick serve the defendants before August 13, 2002. Krafchick directed his paralegal, Diana Rouser, to serve the complaint. He relied on Rouser's assertions that she completed service before the August

---

[1] RCW 4.16.170 requires the plaintiff to serve the defendant(s) within 90 days of filing.

13th deadline. In fact, she did not do so, and the statute of limitations expired on Layouni's personal injury claim. In late September 2002, Krafchick told Mazon about his failure to timely serve the complaint and drafted a letter to Mazon confirming their previous agreement that made Krafchick responsible for filing and serving the complaint.

¶4 Layouni sued Krafchick and Mazon for professional negligence. On February 7, 2003, they settled for $1.3 million. Of this amount, Mazon paid $50,000 through his insurance carrier, and Krafchick paid the balance through his insurance carrier. Each paid his respective deductible. Mazon then filed a complaint in King County Superior Court against Krafchick claiming (1) breach of the joint venture agreement, (2) breach of fiduciary duties, (3) professional negligence, (4) gross negligence, and (5) indemnification. He sought recovery of the following damages: (1) $465.40 in expenses incurred to prosecute Layouni's case, (2) loss of the $325,000 fee he expected to earn, (3) his $2,500 insurance deductible payment, and (4) the settlement payment his insurance carrier made. Mazon and Krafchick filed cross-motions for summary judgment.

¶5 The trial court granted Krafchick's motion on the joint venture, fiduciary duty, professional negligence, and gross negligence claims. The court granted Mazon's motion on the indemnification claim and ordered Krafchick to pay Mazon $2,965 to cover his insurance deductible payment and costs advanced on the Layouni case. Both parties appeal.

## DISCUSSION

¶6 We review summary judgments de novo, performing the same inquiry as the trial court.[2] Summary judgment is proper only when there is no genuine issue about any material fact, and the moving party is entitled to a judg-

---

[2] *Jones v. Allstate Ins. Co.*, 146 Wn.2d 291, 300, 45 P.3d 1068 (2002).

ment as a matter of law.[3] We consider all facts and reasonable inferences in the light most favorable to the nonmoving party.[4] Questions of fact may be determined as a matter of law when reasonable minds can reach only one conclusion.[5]

## I. *Prospective Fees*

¶7 Washington law provides little guidance about the extent to which cocounsel may sue one another for lost or reduced prospective fees. The trial court relied largely on its interpretation of the California Supreme Court's decision in *Beck v. Wecht*,[6] concluding that "absent proof of gross negligence [or] intentional misconduct[,] claims between cocounsel should as a matter of law and/or public polic[y] be strictly limited to lost costs or expenses advanced, if any, by the non-negligent cocounsel." We agree with the trial court that *Beck* and related California case law provide the appropriate approach to claims between cocounsel for lost or reduced prospective fees.[7]

¶8 In *Mason v. Levy & Van Bourg*,[8] plaintiff attorney Mason transferred a client's cases to defendant attorneys on a referral basis in consideration of their paying him a percentage of any recovered contingent fees. The defendants failed to settle the cases or otherwise pursue them before the statute of limitations expired. Mason brought breach of contract and negligence claims, alleging that the defendants' actions prevented him from recovering his expected share of the fees. The court affirmed judgment for the defendants basing its holding on two grounds: (1) a

[3] CR 56(c).

[4] *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

[5] *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985) (citing *LaPlante v. State*, 85 Wn.2d 154, 531 P.2d 299 (1975); *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963)).

[6] 28 Cal. 4th 289, 48 P.3d 417, 121 Cal. Rptr. 2d 384 (2002).

[7] Each party moved to strike portions of the other's reply brief for violating the Rules of Appellate Procedure. We deny both motions because the disputed material does not change our holding.

[8] 77 Cal. App. 3d 60, 67, 143 Cal. Rptr. 389 (1978).

"successor attorney's obligation, if any, to compensate the former attorney for the reasonable value of services rendered matures only upon the occurrence of the agreed contingency[,]" and (2) a "contract between the two attorneys, whatever other obligations it may impose, cannot legally impose upon the successor attorney a duty to pursue the client's case according to the former attorney's interests."[9]

¶9 Addressing the contract claim, the court focused on the paramount need for undivided loyalty to the client.

> This loyalty should not be diluted by a duty owed to some other person, such as an earlier attorney. While, as a practical matter, both the client and the former attorney stand to benefit from any recovery in the client's action, their interests are not identical. For example, in the cases transferred from plaintiff to defendants there was a cross-action against the client, Mr. Lawson. Depending on the circumstances, the client's interests may best be served by withdrawing from the dispute and allowing the statute of limitations to run.... It would be inconsistent with an attorney's duty to exercise independent professional judgment on behalf of his client to impose upon him an obligation to take into account the interests of predecessor attorneys.[10]

The court warned that recognizing duties between successive attorneys representing the same client could lead to a situation where every lawyer could blame his problems with a lawsuit on his predecessors and cause an adverse impact on attorney-client relationships.[11] The court concluded there was no merit to the negligence claim because the defendants owed no duty to Mason to pursue the case in

---

[9] *Mason*, 77 Cal. App. 3d at 67.

[10] *Id.* at 66-67. Notably, despite the cross claim against him, the former client was obviously not happy with the failure to settle or bring the case to trial, as he brought a malpractice action against defendant counsel.

[11] The court stated "[e]very lawyer referring a case to another lawyer would be in a position to claim that the negligence of the second lawyer caused a meritorious claim to be lost or settled for an insufficient amount. Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome." *Id.* at 67.

any particular way. The attorney owes those duties to the client.[12]

¶10 In *Saunders v. Weissburg & Aronson*,[13] Saunders alleged that his cocounsel Weissburg had breached various duties owed to him by influencing the clients to accept a settlement that was, because of their different fee agreements with the clients, more favorable to Weissburg than it was to Saunders.[14] The clients were satisfied with the settlement. The court agreed with the reasoning in *Mason* and Justice Johnson's dissent in *Pollack v. Lytle*.[15] It concluded that "[a]s both Justice Johnson and the *Mason* court observed, recognizing a duty on the part of cocounsel as urged by Saunders would be inconsistent with counsel's duty to exercise independent judgment on behalf of the client."[16]

¶11 Saunders argued that there was no conflict because Weissburg's duty to their mutual clients was the same as the duty he owed Saunders. But, as the court observed, there was a conflict between Saunders and the clients because they were satisfied with Weissburg's representation while Saunders was not. It adopted Justice Johnson's position that " 'in balancing the interests of attorneys in protecting their fees and the public policy of protecting clients' rights to receive the undivided loyalty of all counsel

---

[12] *Id.*

[13] 74 Cal. App. 4th 869, 87 Cal. Rptr. 2d 405 (1999).

[14] *Id.* at 871. Saunders' causes of action included breach of contract, breach of fiduciary duty, and negligence.

[15] 120 Cal. App. 3d 931, 175 Cal. Rptr. 81 (1981). In *Pollack*, the majority held there was a fiduciary duty between cocounsel. It distinguished *Mason* because it involved a client's initial counsel suing successor counsel, while *Pollack* involved a claim between cocounsel. Justice Johnson and the later decisions in *Saunders* and *Beck* held that this was a distinction without a difference because the "duty of both the associate and successor attorney is the same: to serve the best interests of the client." *Saunders*, 74 Cal. App. 4th at 873.

[16] *Saunders*, 74 Cal. App. 4th at 874.

who represent them, the wiser course is to reject the recognition of a fiduciary duty between cocounsel.' "[17]

¶12 In *Beck*, Wecht settled a malpractice claim brought by his and Beck's clients after Wecht failed to follow the clients' settlement instructions.[18] Beck then sued Wecht for breach of fiduciary duty to recover the fee he would have received had Wecht followed the clients' instructions and settled the case. The court addressed the issue whether "one cocounsel may sue another for *breach of fiduciary duty* on the theory that the latter's malpractice in handling their mutual client's case reduced or eliminated the fees the former expected to realize from the case."[19] The *Beck* court agreed with *Saunders* that it would violate public policy to allow attorneys to sue each other on the theory that "cocounsel have a fiduciary duty to protect one another's prospective interests in a contingency fee."[20] It cited *Saunders* as an example of the potential for conflict if cocounsel owed fiduciary duties to one another to maximize each other's fees. "The most cynical views of the legal profession would be confirmed by recognition of a fiduciary duty on the part of cocounsel to maximize one another's fees."[21] In relying on *Saunders*, the court also implicitly endorsed *Mason*'s public policy rationale.

¶13 The court decided *Musser v. Provencher*[22] concurrently with *Beck*. There, Musser filed an indemnity claim

---

[17] *Id.* (quoting *Pollack*, 120 Cal. App. 3d at 949 (Johnson, J., dissenting)). Justice Johnson agreed with the *Mason* court that "the client's interests must be protected from even the *possibility* of less than total devotion to his interests by the attorney of his choice." *Pollack*, 120 Cal. App. 3d at 947 (Johnson, J., dissenting) (emphasis added).

[18] Throughout the trial, defendant General Motors had offered to settle the case for $6 million. On the eve of closing arguments, the clients instructed Wecht and another cocounsel, McBee, to accept the offer. Wecht and McBee never contacted General Motors, and the jury eventually returned a defense verdict. *Beck*, 28 Cal. 4th at 291.

[19] *Id.* at 290.

[20] *Id.* at 291.

[21] *Id.* at 297. In affirming the reasoning in *Mason* and *Saunders*, the court disapproved *Pollack v. Lytle. Id.* at 298.

[22] 28 Cal. 4th 274, 48 P.3d 408, 121 Cal. Rptr. 2d 373 (2002).

against cocounsel Provencher after settling a malpractice claim their client filed. The settlement included a $85,000 payment and $20,000 in waived legal fees and costs.[23] Musser sought to recover the damages she incurred when she settled. The question in *Musser* was "whether concurrent or cocounsel may sue one another for *indemnification* of malpractice damages."[24] The court held that an attorney's self interest will not necessarily "interfere with loyalty to the client just because the attorney, as a joint tortfeasor, may face an indemnification claim if the client sues the attorney's concurrent counsel or cocounsel for malpractice."[25]

¶14 *Beck* and *Musser*, when read in conjunction with *Mason* and *Saunders*, establish several rules and guidelines for claims between cocounsel. Two main policy concerns arise in these cases: (1) whether the claim creates a conflict between an attorney's duty to the client and the attorney's self interest, and (2) whether the claim compromises the confidentiality of attorney-client communications.[26] " '[R]egardless of [the] legal theory asserted, . . . a client's right to the undivided loyalty of his or her attorneys must be protected, even when the result of such rule is the denial of an attorney's cause of action against another attorney.' "[27] Like California, Washington ethical rules are clear that " '[t]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No excep-

[23] Musser's insurance paid all but the $10,000 deductible portion of the $85,000.

[24] *Musser*, 28 Cal. 4th at 282. Two previous appellate decisions had held that conflict of interest considerations prohibited indemnification in predecessor/successor counsel cases. The *Musser* court held that this "blanket" rule did not apply to cocounsel cases.

[25] *Id.* at 284. Contrary to Mazon's counsel's assertion at oral argument, Mazon's situation is not akin to Musser's, and that case does not permit recovery of prospective fees. In the malpractice settlement, Musser had waived actual fees billed and costs she had incurred, and the court held she could bring an indemnification claim for those actual losses. Here, Mazon never billed any fees because it was a contingent fee case.

[26] *Id.* Attorney-client communications are not an issue in this case.

[27] *Saunders*, 74 Cal. App. 4th at 873-74 (quoting *Pollack*, 120 Cal. App. 3d at 945 (Johnson, J. dissenting)).

tions can be tolerated.' "[28] Public policy prohibits an attorney from owing a duty to anyone other than the client when the collateral duty creates a risk of divided loyalty due to conflicts of interest or breaches of confidence.[29]

■ ¶15 Here, Mazon argues that Krafchick's malpractice was a breach of contract and/or negligence, which eliminated the fees he expected to earn from representing Layouni. He argues that his claims do not create a potential conflict with Krafchick's overriding duty to Layouni. But whether Mazon argues breach of contract or negligence, both theories impose a duty on Krafchick to represent Layouni so as to preserve Mazon's interest in the prospective fee. Any duties arising from cocounsel's division-of-labor agreement are owed to the client, not one another. We hold that Mazon's claims for lost prospective fees create the same potential—and impermissible—conflicts as the fiduciary duty claim in *Beck*.

■ ¶16 Mazon tries to distinguish his negligence claim from the fiduciary duty claim in *Beck* by characterizing himself and Krafchick as joint venturers. He alleges that Krafchick breached the duty owed by one partner to another. Essentially, Mazon asserts that joint venturing cocounsel owe one another a duty to conduct the lawsuit in a manner that does not diminish or eliminate the fees each expects to collect. But this is a distinction without a difference. With or without the joint venture, Mazon and Krafchick are still cocounsel, and the *Beck* rule still applies. The collateral duty between joint venturers, as with the fiduciary duty in *Beck*, potentially places cocounsel's self interest in conflict with the undivided loyalty he owes the client. The joint venturing cocounsel would be forced to consider not only the client's best interest, but also the other's interest in recovering a fee as a result of the

---

[28] *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 388, 715 P.2d 1133 (1986) (quoting *Van Dyke v. White*, 55 Wn.2d 601, 613, 349 P.2d 430 (1960)).

[29] *Jones*, 146 Wn.2d at 318 (citing *Trask v. Butler*, 123 Wn.2d 835, 844, 872 P.2d 1080 (1994)).

venture. Joint venturing cocounsel each owe their client the same undivided duty of loyalty as does any other attorney.

¶17 As in *Mason*, Krafchick did not owe Mazon a duty to pursue the case in any particular manner. Those duties were to Layouni alone. Allowing cocounsel to sue each other for lost prospective fees, regardless of the basis for the claim, implicates the same concerns as the court discussed in *Beck*. We adopt the holding and rationale of the *Beck* line of cases discussed above. We hold that joint venturing cocounsel do not owe each other a duty to pursue a case so as to preserve each other's fee expectations.

■ ■ ¶18 Mazon points out that the trial court sanctioned recovery of lost prospective fees if he could prove gross negligence or intentional misconduct.[30] He asserts that the trial court erred in finding there was no material issue about whether Krafchick was grossly negligent in managing the joint venture. Krafchick argues that *Beck* does not allow recovery of prospective fees, regardless of the degree of negligence. We agree with Krafchick that *Beck* provides no basis for recovering lost prospective fees in negligence actions between cocounsel, and we see no reason to do so. *Beck* created a bright-line rule, without exceptions for gross negligence or intentional misconduct, with which we agree.

¶19 Mazon argues that the division-of-labor agreement was a contract that imposed a collateral duty on Krafchick to timely file the complaint.[31] But decisions about how to pursue a case must be based on the client's best interests, not the attorneys'. Mazon associated Krafchick on the case because he felt it was in Layouni's best interest to do so.

---

[30] The trial court found that Krafchick was not grossly negligent.

[31] We note that Washington law imposes no liability on joint venturers for negligence in managing a joint venture unless the negligence "causes injury to the person or property of the other joint venturer or if the venture calls for him to exercise a particular or extraordinary degree of diligence and skill." *Duffy v. Piazza Constr., Inc.*, 62 Wn. App. 19, 23, 815 P.2d 267 (1991). Although Mazon argues that the standard of care for a joint venturing attorney inherently involves a "particular or extraordinary" degree of diligence and skill, we need not address this argument because our holding is based on other grounds.

Each attorney owed a duty to Layouni to perform his designated tasks in Layouni's best interests. Mazon asserts that Krafchick's contractual duty to him did not affect his loyalty to Layouni because timely service of the complaint was also in Layouni's best interest. While Mazon is factually correct about this point, we share the *Beck* court's concern that allowing cocounsel to sue for fee expectations creates the *potential* for conflict between an attorney's duty to the client and his cocounsel's self-interest. As in *Mason*, counsel's interest in meeting the statute of limitations aligned with the client's best interests, but the court was still concerned that allowing suits for prospective fees could create future conflicts because circumstances may arise where "the client's interests may best be served by withdrawing from the dispute and allowing the statute of limitations to run."[32]

¶20 Prohibiting cocounsel from recovering prospective fees from each other promotes diligent representation of the client.[33] It encourages cocounsel to back each other up and ensure that there are fewer mistakes in pursuing the best outcome for the client. Allowing recovery of prospective fees could create an incentive to ignore cocounsel's negligence and recover an expected contingent fee without a settlement or favorable judgment for the client. Under these circumstances, an attorney's self interest would trump his duty of undivided loyalty to the client.

¶21 Thus, although Mazon's contract claim in this case did not create an actual conflict with his and Krafchick's undivided loyalty to Layouni, important public policy considerations dictate against allowing contractual claims between cocounsel for lost prospective fees. Because allowing negligence and breach of contract claims between cocounsel for lost prospective fees creates a potential conflict with an attorney's undivided loyalty to the client, we hold that public policy as embodied in the Rules of Professional

---

[32] *Mason*, 77 Cal. App. 3d at 67.

[33] "A lawyer shall act with reasonable diligence and promptness in representing a client." RPC 1.3.

Conduct requires a bright-line rule prohibiting one co-counsel from suing another for prospective fees, regardless of the theory of recovery. A bright-line rule prevents conflicts from arising at any point in the representation, assures the client's interest is paramount regardless of the issue, and is easy to administer.

## II. *Collateral Source Rule*

¶22 Mazon also argues that under the collateral source rule he can recover the $50,000 his insurance company paid to cover his portion of the malpractice settlement. Krafchick argues that the collateral source rule does not apply because Mazon's "loss" consisted of a settlement that he personally never paid. The trial court awarded Mazon only the $2,500 he personally paid to cover his insurance deductible.

■ ¶23 The collateral source rule applies when an injured party is compensated for his or her injuries from a source other than the tortfeasor.[34] The rule exists so that the wrongdoer does not benefit from collateral payments to the person he has wronged.[35] " '[T]he very essence of the collateral source rule requires exclusion of evidence of other money received by the claimant so the fact finder will not infer the claimant is receiving a windfall and nullify the defendant's responsibility.' "[36]

■ ¶24 Here, the collateral source rule applies because Mazon's portion of the Layouni settlement was an "injury" to him that was in turn covered by his insurance company. As required by the rule, we cannot consider who actually covered the cost of the injury. That is between Mazon and his insurer, and the insurance company is not a party to

---

[34] *Petersen-Gonzales v. Garcia*, 120 Wn. App. 624, 635-36, 86 P.3d 210 (citing *Ciminski v. SCI Corp.*, 90 Wn.2d 802, 804, 585 P.2d 1182 (1978)), *review denied*, 152 Wn.2d 1027 (2004).

[35] *Id.* at 636 (citing *Wash. Ins. Guar. Ass'n v. Mullins*, 62 Wn. App. 878, 886, 816 P.2d 61 (1991)).

[36] *Id.* (quoting *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 803, 953 P.2d 800 (1998)).

this action. Mazon is entitled to the $50,000 that covered the cost of his injury resulting from the settlement.

## III. *Comparative Fault*

¶25 On cross appeal, Krafchick argues that the trial court erred in granting summary judgment to Mazon on his indemnification claim.[37] He asserts that a reasonable jury could conclude that Mazon shared some responsibility for the failure to timely serve the complaint. The "basis for contribution among liable persons is the comparative fault of each such person."[38] The issue here is whether there was any evidence from which a jury could reasonably conclude that Mazon was partially at fault for failing to timely serve the complaint. But Krafchick sent Mazon a letter confirming their division of labor agreement, in which he stated: "[y]ou agreed to draft the complaint and find the addresses and agents of the Defendants to serve. We agreed and took responsibility for filing the complaint and serving the complaint." Krafchick argues that his agreement to serve the complaint did not allow Mazon to abdicate responsibility for service. Essentially, Krafchick argues that because Mazon was not monitoring Krafchick's work, he is partly at fault for Krafchick's errors.[39] He states that "Mazon is liable for Rouser's conduct to the same extent that Krafchick is liable, because Mazon was a princip[al] of the joint venture for which Diana Rouser was acting at the time of her dishonest and negligent behavior."

¶26 This argument is without merit. The attorneys agreed that Krafchick would serve the complaint and, through no fault of Mazon's, Krafchick did not do it on time. It was Krafchick's paralegal, Rouser, who failed to serve the

---

[37] Krafchick properly points out that Mazon's indemnification claim is actually a claim for contribution.

[38] RCW 4.22.040(1).

[39] Krafchick claims that Mazon "could have prevented what happened as equally as I could have prevented what happened had we done it right." He states "I took responsibility to file and serve the complaint but that does not remove my belief that Mr. Mazon would equally have been able to monitor whether that had happened, to call our attention to the fact that it hadn't happened."

complaint. It was not Mazon's responsibility to ensure that Krafchick's staff did their jobs. Only Krafchick was responsible for Rouser's conduct.

¶27 It is true that Mazon could have asked Krafchick to see the Layouni file to ensure that service was completed before the deadline, or asked Krafchick for proof of service before the deadline, or confirmed service with the defendants. But Mazon had no reason to think that Krafchick, an experienced attorney who had no previous problems serving a complaint, required supervision for such a routine task. Mazon did not have a duty to supervise Krafchick.

¶28 Even viewing the evidence in the light most favorable to Krafchick, no jury could reasonably find that Mazon's actions contributed to the failure to timely serve the complaint. The trial court properly granted summary judgment for Mazon on his indemnification claim.

¶29 We affirm the trial court's order granting summary judgment to Krafchick based on *Beck*. We affirm the trial court's grant of summary judgment to Mazon on his indemnity claim for lost costs and expenses. We reverse the portion of the trial court's order that held cocounsel can recover lost prospective fees from one another in cases of gross negligence or intentional misconduct and the order denying Mazon's claim for the $50,000 settlement payment.

GROSSE and BAKER, JJ., concur.

Motions for reconsideration denied June 6, 2005.

Review granted at 156 Wn.2d 1010 (2006).