[No. 77398-0.   En Banc.]
Argued May 16, 2006.   Decided October 19, 2006.

MICHAEL E. MAZON, *Petitioner*, v. STEVEN P. KRAFCHICK ET AL., *Respondents*.

442

*C. Nelson Berry III* (of *Berry & Zundel, P.L.L.C.*), for petitioner.

*Joel E. Wright* and *Alison H. Grennan* (of *Lee Smart Cook Martin & Patterson, P.S.*), for respondents.

¶1 C. JOHNSON, J. — This case involves a dispute between two attorneys who had corepresented a client in a personal injury action. The client's lawsuit was dismissed after one of the attorneys failed to timely serve the complaint and the statute of limitations expired. The client brought a claim for malpractice against both attorneys, which was settled for $1.3 million. The dispute here arose when Michael Mazon sued his cocounsel Steven Krafchick, seeking to recover for the loss of his expected contingency fee, for the amount his insurance company paid to settle the client's lawsuit, for his out of pocket insurance deductible, and for the costs he advanced in the client's lawsuit. The issues presented are whether, under these facts, cocounsel may sue one another for the loss of prospective fees and whether the collateral source rule applies to money paid by the insurance carrier.

¶2 The trial court dismissed the claims on summary judgment. The Court of Appeals affirmed the trial court's ruling that public policy prohibits one cocounsel from recovering against the other for the loss of an expected contingency fee under any circumstances. The Court of Appeals reversed the trial court and held that the collateral source rule applied and allowed full recovery of the amount the insurance carrier had paid to settle the claim. We affirm in part and reverse in part and reinstate the trial court decision.

## FACTS

¶3 On May 18, 1999, Tahar Layouni was electrocuted and seriously injured when a drilling company drilled into a buried electric line and caused a charge to surge through the area where Layouni was working. In July 1999, Layouni retained attorney Michael Mazon to represent him to recover damages for his resulting fibromyalgia and chronic pain. With Layouni's consent, Mazon associated Steven Krafchick, an attorney with special expertise in this area. Mazon and Krafchick agreed in what the parties consider a "joint venture agreement" to split fees and costs equally.[1] Clerk's Papers (CP) at 26. They divided the responsibilities informally. Mazon would draft the complaint and find the addresses and agents of defendants to serve, and Krafchick would file and serve the complaint. CP at 28.

¶4 After Mazon drafted the complaint and found the addresses of the agents, Krafchick filed the complaint on May 15, 2002. Since the filing of the complaint tolled the statute of limitations for 90 days, the deadline for serving the defendants was August 13, 2002. Krafchick directed his paralegal to serve the complaint. Though she told Krafchick she had timely served the complaint, she had failed to do so until August 16, 2002, after the statute of limitations expired on Layouni's personal injury claim. In late September, Krafchick told Mazon he had failed to timely serve the complaint. He then drafted a letter to Mazon confirming that he had been responsible for filing and serving the complaint. CP at 28.

¶5 The client's suit was dismissed. Layouni then asserted a claim against both Krafchick and Mazon for professional negligence. CP at 98-99. The attorneys were

---

[1] Both parties characterize the letter confirming the agreement between them as a joint venture agreement. The agreement provided in relevant part:

This letter will embody the terms of our agreement to co-counsel on the Tahar Layouni file. As we discussed, we shall split fees and costs equally. To be sure, we shall each have a claim to 50% of the fee and shall share all costs equally.

Clerk's Papers at 14.

covered by the same malpractice insurance carrier. In mediation, that insurance carrier settled Layouni's claim for $1.3 million. CP at 99. Layouni would not agree to settle his claim unless Mazon also contributed to the settlement and thus the insurance carrier paid $1,250,000 on behalf of Krafchick and $50,000 on behalf of Mazon. CP at 135-36.

¶6 Mazon then filed this lawsuit against Krafchick, asserting causes of action for breach of the agreement, breach of fiduciary duties, professional negligence, and indemnification. Mazon sought damages under each cause of action for (1) the costs he advanced in representing Layouni of $465; (2) the loss of the fee he expected to earn of $325,000;[2] (3) his insurance deductible of $2,500; and (4) the payment of $50,000 his insurance carrier contributed to the settlement of Layouni's claim. CP at 19.

¶7 On cross motions for summary judgment, the trial court dismissed Mazon's causes of action for breach of the agreement and breach of fiduciary duties. The court denied Mazon's request for prospective attorney fees on the grounds that allowing claims for reduced or lost fees would be potentially inconsistent with cocounsel's overriding duties to their client. The court also denied Mazon's requests for damages in the amount his insurance company paid to settle Layouni's professional negligence claim. The court reasoned that absent gross negligence or intentional misconduct, claims between cocounsel should be strictly limited to lost costs or expenses advanced, if any, by the nonnegligent cocounsel.

¶8 Based on the declarations presented in support of the summary judgment motions, the court found that Krafchick was not grossly negligent and did not engage in intentional misconduct. But the court stated that it "finds Mazon free of fault and entitled to recover costs and expenses lost as a proximate result of defendant's negligence. The Court finds

---

[2] The math supporting this amount proceeds as follows, according to Mazon: Layouni received $1.3 million net recovery. A judgment of $1.95 million results in a $1.3 million net recovery. Therefore, the 1/3 contingent fee is $650,000; 1/2 of which is $325,000.

that defendant's negligent conduct proximately caused plaintiff's loss of 'costs advanced' and other out of pocket expenses." CP at 580. The court reasoned, because no evidence was presented to support a finding of plaintiff's negligence (comparative fault), Mazon was entitled to recover his lost costs and expenses advanced. The court awarded Mazon $465 in costs and the insurance deductible of $2,500 he had paid out of pocket to defend Layouni's professional negligence claim. CP at 580.[3] Both parties appealed.

¶9 The Court of Appeals affirmed the denial of Mazon's expected contingency fee and adopted a broad rule prohibiting cocounsel from suing each other for lost or reduced prospective attorney fees. The court also held the collateral source rule applied to the $50,000 paid by Mazon's insurance carrier because Mazon's portion of the Layouni settlement was an "injury" to him that was in turn covered by his insurance company. *Mazon v. Krafchick*, 126 Wn. App. 207, 220-21, 108 P.3d 139 (2005). The court denied both parties' motions for reconsideration.

¶10 Mazon filed a petition for review of whether he is entitled to recover prospective fees. Krafchick filed a petition for review of whether Mazon may recover the amount paid by his insurance company. We granted both petitions. *Mazon v. Krafchick*, noted at 156 Wn.2d 1010 (2006).

## ANALYSIS

### *Recovery of Prospective Fees*

¶11 The extent to which an attorney may sue cocounsel for the loss of prospective fees is an issue of first impression in Washington. The Court of Appeals followed the approach

---

[3] Though the basis for awarding these damages appears to be negligence, the parties and the Court of Appeals identify the basis for them as indemnity. However, the trial court explicitly held that "no contribution nor indemnity claim exists as between co-counsel for indemnity and/or contribution as a matter of law and as a matter of public policy." CP at 579. Since neither party requested review on whether we should affirm the award of those costs, we decline to reach that issue.

of the California courts and rejected the argument that cocounsel owe fiduciary duties to each other on the theory that the latter's malpractice in handling their mutual client's case reduced or eliminated the fees the former expected to realize from the case. *Mazon*, 126 Wn. App. at 216-17. Relying on *Beck v. Wecht*, 28 Cal. 4th 289, 290, 48 P.3d 417, 121 Cal. Rptr. 2d 384 (2002), the Court of Appeals noted, "it would violate public policy to allow attorneys to sue each other on the theory that 'cocounsel have a fiduciary duty to protect one another's prospective interests in a contingency fee.' " *Mazon*, 126 Wn. App. at 215 (quoting *Beck*, 28 Cal. 4th at 291).

¶12 The court recognized that Mazon's claim in this case did not create an actual conflict with his and Krafchick's undivided loyalty to Layouni but decided that public policy dictates against allowing claims between cocounsel for lost prospective fees because of the potential conflict with the undivided loyalty owed to the client. The court reasoned that a bright-line rule is preferable because it prevents conflicts from arising at any point during the representation, assures the client's interest is paramount regardless of the issue, and is easy to administer. *Mazon*, 126 Wn. App. at 220. Thus, the court rejected Mazon's claim on the basis that recovering damages for a prospective contingency fee lost through a misfeasance of cocounsel assumes a duty to conduct the lawsuit in a manner that does not diminish or eliminate the fee each expects to collect. We agree. Imposing a duty to protect prospective fees would create potential impermissible conflicts with the duty of loyalty the attorneys owe their clients.

¶13 The potential conflict of interest identified by the California Supreme Court in *Beck* involved the undivided duty of loyalty that attorneys owe to their clients. The court held this duty may be violated if cocounsel were allowed to sue one another based on a fiduciary duty to protect one another's prospective interests in a contingency fee. In *Beck*, cocounsel represented two clients in a personal injury action against a truck manufacturer. Pretrial settlement

efforts were unsuccessful. On the evening before closing arguments, the defendant offered to settle the case for $6 million. The clients instructed the attorneys to accept the settlement. But the local counsel failed to accept the settlement offer as instructed by the clients, and the jury returned a defense verdict. The lead counsel sued the local counsel, seeking to recover the contingency fee he had expected to earn in the case. The California Supreme Court denied relief on the basis that his claim was contrary to public policy. To avoid any detriment to the jointly represented clients, the court held that no collateral duties could arise that would interfere with the duty of undivided loyalty and total devotion owed to the clients. *See Beck*, 28 Cal. 4th at 297-98.

¶14 Consistent with *Beck*, the Court of Appeals in this case recognized that "Washington ethical rules are clear that '[t]he standards of the legal profession require undeviating fidelity of the lawyer to his client. No exceptions can be tolerated.' Public policy prohibits an attorney from owing a duty to anyone other than the client when the collateral duty creates a risk of divided loyalty due to conflicts of interest or breaches of confidence." *Mazon*, 126 Wn. App. at 216-17 (footnote omitted) (internal quotation marks omitted) (quoting *Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 388, 715 P.2d 1133 (1986)). The Court of Appeals rejected Mazon's argument that his claim based on Krafchick's malpractice did not create a potential conflict of interest with either attorney's overriding duty to their client. The court reasoned that Krafchick did not owe Mazon a duty to pursue the case in any particular manner because those duties were to Layouni alone. Therefore, the court concluded that allowing cocounsel to sue each other for lost prospective fees, regardless of the basis for the claim, implicates the same concerns as discussed in *Beck*.

¶15 We agree with the Court of Appeals' reasoning and adopt a bright-line rule that no duties exist between cocounsel that would allow recovery for lost or reduced prospective fees. As cocounsel, both attorneys owe an undi-

vided duty of loyalty to the client. The decisions about how to pursue a case must be based on the client's best interests, not the attorneys'. The undivided duty of loyalty means that each attorney owes a duty to pursue the case in the client's best interests, even if that means not completing the case and forgoing a potential contingency fee.

¶16 If we were to recognize an attorney's right to recover from cocounsel prospective fees, potential conflicts of interest that harm the client's interests may arise. Cocounsel may develop an impermissible self-interest in preserving the claim for the prospective fee, even when the client's interests demand otherwise. Additionally, the question of whether an attorney's claim conflicts with the client's best interests may be difficult to answer. Discretionary, tactical decisions, such as whether to advise clients to settle or risk proceeding to trial and determining the amount and structure of settlements, could be characterized by cocounsel as a breach of the contractual duties or general duties of care owed to one another and provide a basis for claims seeking recovery of prospective fees. As the California Supreme Court recognized, in comparing the issue to lawsuits for prospective fees between successive attorneys,

> "[p]ublic confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome. Considerations of public policy support the conclusion that an attorney's duty of undivided loyalty to his client should not be diluted by imposing upon him obligations to the client's former attorney, or at least obligations greater than the client himself owed to the former attorney."

*Beck*, 28 Cal. 4th at 296 (quoting *Mason v. Levy & Van Bourg*, 77 Cal. App. 3d 60, 67, 143 Cal. Rptr. 389 (1978)).

¶17 Mazon contends that prohibiting cocounsel from suing each other for prospective fees would undermine the public's confidence in the legal system because cocounsel could not be held fully liable to each other. He states that "when an attorney can recover only nominal damages from

cocounsel, despite the loss of a substantial prospective fee, but is confronted with a significant claim for professional negligence from the client through no fault of his own, the incentive will be to collude with cocounsel to minimize or to conceal the client's malpractice claim. Absent a viable legal remedy to recover his own damages, an attorney is thus more likely to be less diligent about protecting the interests of the client, rather than more." Mazon's Pet. for Review at 12-13. Under these circumstances, he argues, the attorney's interest in protecting himself from liability will trump his duty of undivided loyalty to the client.

¶18 However, we find this argument unpersuasive because it presumes that allowing cocounsel to recover prospective fees will eliminate attorneys' incentive to collude and protect themselves from liability. Instead, we believe that allowing cocounsel to recover prospective fees would create the opposite incentives to overemphasize the informal divisions of responsibilities between cocounsel, overlook any failings of cocounsel, and later claim that cocounsel's failures were not their responsibility. Prohibiting cocounsel from suing each other for prospective fees arising from an attorney's malpractice in representing their mutual client provides a clear message to attorneys: each cocounsel is entirely responsible for diligently representing the client.

¶19 The Court of Appeals correctly recognized that this approach encourages cocounsel to back each other up and ensure that there are fewer mistakes in pursuing the best outcome for the client. Cocounsel are in the best position to ensure that they are not injured by each other's mistakes. This approach is consistent with the attorneys' duty to maintain undivided loyalty to the client. The public interest is best served by this approach because attorneys must exercise diligence when choosing and working with cocounsel to preserve the undivided duty to the client. We affirm the Court of Appeals on this issue and adopt the bright-line rule rejecting the recognition of a duty upon which cocounsel could recover from each other prospective attorney fees.

## Recovery of Insurance Payment

¶20 Mazon's complaint sought recovery of his insurance payment under each of the four causes of action he alleged. The Court of Appeals held the collateral source rule applied to give Mazon a basis for recovering the $50,000 settlement his insurance carrier paid Layouni. The Court of Appeals did not identify the cause of action on which it deemed Mazon was entitled to recover from Krafchick. By failing to identify the basis for ruling that Mazon was entitled to recover the settlement amount his insurance company paid to Layouni, the Court of Appeals evidently applied the collateral source rule as an equitable cause of action, not an evidentiary rule.

¶21 The Court of Appeals may have believed Mazon was entitled to relief under his indemnity cause of action from Krafchick because the parties both believed the trial court granted Mazon's indemnification claim. But Mazon and Krafchick had no contractual agreement to indemnify each other, and Mazon provides no legal basis for a right to indemnification from Krafchick.

¶22 If Mazon's claim for indemnity is analyzed as a claim for contribution, he is still not entitled to relief from Krafchick. In the absence of contractual indemnity, a party's right to contribution, also referred to as equitable indemnity, is governed by chapter 4.22 RCW. "Contribution" is "[a] tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." BLACK'S LAW DICTIONARY 353 (8th ed. 2004). The contribution statute provides that the right of contribution is limited to parties who have been held jointly and severally liable for the plaintiff's injury. RCW 4.22.070.

¶23 Joint and several liability, which gives rise to a claim for contribution, only exists in limited circumstances, including where the plaintiff is free of fault and judgment has been entered against two or more defendants. RCW 4.22-

.070. We have interpreted this provision to mean that "[s]ettling parties, released parties, and immune parties are not parties against whom judgment is entered and will not be jointly and severally liable . . . ." *Kottler v. State*, 136 Wn.2d 437, 447, 963 P.2d 834 (1998). Mazon does not establish that he meets any of the limited circumstances where defendants are considered jointly and severally liable. Although Layouni may have been free of fault, no judgment was entered against Mazon and Krafchick. Therefore, they were not held jointly and severally liable, and Mazon is not entitled to contribution. Because Mazon is not entitled to indemnity or contribution from Krafchick, Mazon is not entitled to recover and the collateral source rule is inapplicable.

¶24 The collateral source rule is an evidentiary principle that enables an injured party to recover compensatory damages from a tortfeasor without regard to payments the injured party received from a source independent of a tortfeasor. *Johnson v. Weyerhaeuser Co.*, 134 Wn.2d 795, 798, 953 P.2d 800 (1998). The rule comes from tort principles as a means of ensuring that a fact finder will not reduce a defendant's liability because the claimant received money from other sources, such as insurance carriers. This rule, however, does not create a cause of action and does not apply under the facts of this case. The Court of Appeals erroneously applied the collateral source rule as an equitable cause of action, allowing Mazon to recover the amount paid by his insurance carrier because of Krafchick's negligence.

## CONCLUSION

¶25 We affirm the Court of Appeals' conclusion that Mazon is not entitled to recover prospective attorney fees from Krafchick. Where each attorney owes an undivided duty of loyalty to his or her mutual client, cocounsel's claim for prospective attorney fees creates an impermissible potential for conflicts of interest.

¶26 We reverse the Court of Appeals' determination that the collateral source rule entitles Mazon to recover for the amount his insurance carrier paid to settle the client's professional negligence action.

ALEXANDER, C.J., and MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶27 SANDERS, J. (dissenting) — The majority holds an attorney can never recover prospective fees from cocounsel. I disagree. Instead of focusing on the facts at hand, the majority seeks to prevent *any possible conflict* at *any possible time* in *any possible case*. Majority at 448-49 (fearing "*potential* conflicts of interest that harm the client's interests *may* arise" (emphasis added)). It claims any liability between attorneys for prospective fees creates a fiduciary duty between attorneys, which might interfere with an attorney's duty of loyalty to the client. The duty breached here, however, is the standard duty of due care every professional owes to any foreseeable plaintiff as well as the duty we all have not to break our contracts. And there is no conflict of interest if an attorney recovers fees from cocounsel because cocounsel has already damaged the mutual client's case through his own negligence.

¶28 Tahar Layouni was injured and retained Michael Mazon to recover for his personal injury. Mazon associated Steven Krafchick as cocounsel. Both entered into a joint venture agreement to "split fees and costs equally," Clerk's Papers (CP) at 26, where Mazon was to draft the complaint and find the addresses of the defendants for service and Krafchick was to file and serve the complaint. Krafchick failed to do his part and as a consequence Layouni's case was dismissed. Layouni then sued both attorneys for malpractice and recovered $1.3 million. If Layouni had recovered this net amount at trial, after paying an agreed one-third contingent fee, each attorney would have received a $325,000 fee. However because of Krafchick's inaction, Mazon was denied any fee. Mazon has three dis-

tinct theories to support recovery: tort, contract, and unjust enrichment.

¶29 I agree an attorney owes every client an undivided duty of loyalty, and this duty is inviolate and must be protected. But the majority's rule is so broad it insulates attorneys from responsibility for their professional negligence even where there is no remaining duty to the client to protect. After Krafchick breached his duty of care, resulting in dismissal of the case, Layouni no longer needs Krafchick's loyalty. But instead of providing the proper remedy to Mazon for Krafchick's negligence, the majority protects Krafchick, providing a broad shield apparently available only to lawyers.

I.   Krafchick breached his duty of care to Mazon

¶30 Any other professional must bear the cost of his negligence.[4] The majority looks to California precedent to support the claim there is no fiduciary duty between lawyers. Majority at 447 (citing *Beck v. Wecht*, 28 Cal. 4th 289, 290, 48 P.3d 417, 121 Cal. Rptr. 2d 384 (2002)). However, *Beck* only holds an attorney does not have a *fiduciary* duty to protect a cocounsel's fees. That is all it holds. *Beck*, 28 Cal. 4th at 298.[5] But even assuming an attorney owes no fiduciary duty to cocounsel, he must still exercise that duty of care and act as a reasonable attorney would under similar circumstances. RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 52(1), at 375 (2000) ("[A] lawyer who owes a

---

[4] The *Restatement (Second) of Torts* recites the familiar standard of care for professionals: "[O]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." RESTATEMENT (SECOND) OF TORTS § 299A (1965). *See also Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992) ("To comply with the duty of care, an attorney must exercise the degree of care, skill, diligence, and knowledge commonly possessed and exercised by a reasonable, careful, and prudent lawyer in the practice of law in this jurisdiction.").

[5] In a companion case to *Beck*, the California Supreme Court allowed an attorney to sue cocounsel for indemnification. *Musser v. Provencher*, 28 Cal. 4th 274, 284, 48 P.3d 408, 121 Cal. Rptr. 2d 373 (2002). There was no fiduciary duty involved that might potentially divide the attorney's loyalty to his client. The California rule is more limited than what the majority creates today.

duty of care must exercise the competence and diligence normally exercised by lawyers in similar circumstances."). A lawyer owes a duty of care to nonclients when:

> (a) [T]he lawyer ... invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and

> (b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection.

*Id.* § 51(2), at 356-57.[6] Under this rule Krafchick owed Mazon a duty because Krafchick invited Mazon to rely on the provision of his legal services, and Mazon did rely. Discussing the rule's rationale, the American Law Institute balances the same concerns raised by the majority:

> Lawyers regularly act in disputes and transactions involving nonclients who will foreseeably be harmed by inappropriate acts of the lawyers. Holding lawyers liable for such harm is sometimes warranted. Yet it is often difficult to distinguish between harm resulting from inappropriate lawyer conduct on the one hand and, on the other hand, detriment to a nonclient resulting from a lawyer's fulfilling the proper function of helping a client through lawful means. Making lawyers liable to nonclients, moreover, could tend to discourage lawyers from vigorous representation. Hence, a duty of care to nonclients arises only in the limited circumstances described in the Section.

*Id.* § 51 cmt. b at 358. And these limited circumstances are present here. Mazon was foreseeably harmed by Krafchick's

---

[6] The number of cases citing to section 51 of the *Restatement* shows lawyers must also be conscious of how their actions will affect nonclients. Whether from cocounsel or others, a lawyer is susceptible to lawsuits from nonclients. This threat does not force the lawyer to violate his duty of loyalty; it motivates him to act properly, both for his client and foreseeable plaintiffs. *See, e.g., Paradigm Ins. Co. v. Langerman Law Offices*, 200 Ariz. 146, 155, 24 P.3d 593 (2001) (holding "a lawyer has a duty, and therefore may be liable for negligent breach, to a nonclient under the conditions set forth in previous case law and the RESTATEMENT"); *Osornio v. Weingarten*, 124 Cal. App. 4th 304, 312, 21 Cal. Rptr. 3d 246 (2004) (allowing a disqualified beneficiary to sue the attorney who prepared the will for negligence); *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 186, 876 A.2d 253 (2005) (allowing a bank to sue an attorney who negligently prepared an opinion letter to the bank from the attorney's client); *Friske v. Hogan*, 2005 SD 70, 698 N.W.2d 526, 532 (allowing children to maintain a malpractice action against the attorney for negligence in drafting their father's will).

failure to timely serve the defendant. Concerns militating against liability are not present here. There is no difficulty distinguishing the harm resulting from Krafchick's negligence and Krafchick's assisting his client. Krafchick was not helping his client when he failed to timely serve a complaint. Nor does liability discourage vigorous representation; rather liability encourages zealous advocacy.

¶31 Krafchick is also liable under section 56 of the *Restatement*. This section provides "a lawyer is subject to liability to a client or nonclient when a nonlawyer would be in similar circumstances." *Id.* § 56, at 416. Unlike the majority, the *Restatement* makes no special exemption for attorneys:

> Lawyers are subject to the general law. If activities of a nonlawyer in the same circumstances would render the nonlawyer civilly liable or afford the nonlawyer a defense to liability, the same activities by a lawyer in the same circumstances generally render the lawyer liable or afford the lawyer a defense.

*Id.* § 56 cmt. b at 416. Krafchick would generally be liable for his negligence. His negligence arguably cost Layouni $1.3 million in potential recovery and Mazon $325,000 in potential fees. Layouni recovered his share in the form of a credit to the settlement. However Mazon recovered nothing.

¶32 The majority fears attorneys might "develop an impermissible self-interest in preserving the claim for the prospective fee, even when the client's interests demand otherwise." Majority at 449. This is fiction. Krafchick's negligence would never be in the client's interest. An attorney must always timely serve a complaint and failure to do so may be negligent. When an attorney commits malpractice and that same misconduct damages cocounsel, there is no reason both the client and cocounsel should not be allowed to recover. This result does not jeopardize an attorney's duty of loyalty, it promotes it.

## II. Krafchick breached his contract to Mazon

¶33 In its eagerness to announce its broad rule, the majority conflates Mazon's causes of action and unwittingly attacks the freedom to contract. Even if an attorney can be specially insulated from his professional responsibilities, surely he must be at least held to his contracts. Mazon and Krafchick explicitly agreed to bear and divide the responsibilities, costs, and profits of their joint venture. CP at 26. Mazon agreed to prepare the complaint and Krafchick agreed to serve it. Mazon held up his end of the bargain; Krafchick breached his.

¶34 When a contract is breached, the nonbreaching party is generally entitled to expectation damages. The *Restatement (Second) of Contracts* entitles Mazon to:

> (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

> (b) any other loss, including incidental or consequential loss, caused by the breach, less

> (c) any cost or other loss that he has avoided by not having to perform.

RESTATEMENT (SECOND) OF CONTRACTS § 347, at 112 (1981), *quoted with approval in Eastlake Constr. Co. v. Hess*, 102 Wn.2d 30, 46, 686 P.2d 465 (1984). Krafchick breached his promise to serve the complaint, costing Mazon any fee he would have earned. The majority does not address Mazon's contractual claims and suggests no reason why breach of the contract should also be excused. The Court of Appeals rejected Krafchick's contract claims because it claimed the agreement created the specter of a divided duty of loyalty. But there was no inconsistency here between serving the interests of the client and the cocounsel. If an attorney cannot hold cocounsel liable for a breach of contractual obligations between them, contracts become meaningless scraps of paper. The law holds Krafchick must be held to his contract, but the majority's decision threatens the integrity of any cocounsel agreement.

### III. Krafchick will be unjustly enriched if allowed to keep damages owed to Mazon

¶35 Equity also supports Mazon's recovery. Assuming the damages calculation was correct, Krafchick's negligence and breach of contract lost a potential $1.9 million recovery. Layouni received the two-thirds he was entitled to. According to the contract, Mazon was entitled to one-half the remainder. But Krafchick never had to pay. The *Restatement (Third) of Restitution* begins with the familiar rule: "A person who is unjustly enriched at the expense of another is liable in restitution to the other." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 (Discussion Draft 2000).[7] The majority allows Krafchick to keep the $325,000 owed to Mazon. This is precisely what the *Restatement* forbids. *Id.* § 1 cmt. a.

### IV. Public policy favors allowing Mazon to recover prospective fees

¶36 The majority claims public policy motivates its holding, not preexisting legal standards. The majority accepts the Court of Appeals rationale that a bright-line rule "prevents conflicts from arising at any point during the representation, assures the client's interest is paramount regardless of the issue, and is easy to administer." Majority at 447. While the majority is correct that allowing attorneys to recover prospective fees under limited circumstances may not always be easy to administer, a judge's job is not necessarily an easy one. The remaining concerns are irrelevant if an attorney loses his client's case through negligence and incompetence. Liability arose only after the malpractice. If the client's best interests were paramount, Krafchick would have timely served the defendant. Linking liability to cocounsel and liability to the client provides a greater incentive for an attorney to pursue the case.

---

[7] Restitution is more than a contract remedy. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. h at 12 (Discussion Draft 2000). Rather it is "itself a source of obligations, analogous in this respect to tort or contract." *Id.*

¶37 The majority also claims letting attorneys sue one another will erode public confidence—what little remains—in the legal system.[8] This is speculation at most, not adequate reason to deny a lawyer the legal right to recover damages sustained as the result of another's negligence or breach of contractual duty. What will the image of lawyers insulating themselves from liability do? By turning a blind eye to an attorney's negligence, the majority hopes to encourage "cocounsel to back each other up and ensure that there are fewer mistakes in pursuing the best outcome for the client." Majority at 450. Apparently Mazon should have checked with Krafchick daily, acting as his cocounsel's keeper. An attorney with enough time to constantly investigate his cocounsel's activities likely does not need cocounsel in the first place. Dividing responsibilities provides common clients extra talent and resources and promotes efficiency.

¶38 The majority hopes to send a clear message: "each cocounsel is *entirely* responsible for diligently representing the client." Majority at 450 (emphasis added). The bright-line rule adopted today does the opposite; Krafchick is only partially responsible for his mistake. He breached his duties of care to both client and cocounsel. Based on the settlement amount, this cost Layouni $1.3 million and Mazon $325,000. Layouni recovered $1.3 million, while Mazon recovered nothing.

¶39 Mazon should be allowed to recover his prospective fees from Krafchick. Accordingly the Court of Appeals should be reversed.

¶40 I dissent.

Reconsideration denied January 11, 2007.

---

[8] The majority cites from *Beck* as support: "Public confidence in the legal system may be eroded by the spectacle of lawyers squabbling over the could-have-beens of a concluded lawsuit, even when the client has indicated no dissatisfaction with the outcome." *Beck*, 28 Cal. App. 4th at 296. That hypothetical is not this case. Layouni sued both Krafchick and Mazon for malpractice; there is no greater way to indicate dissatisfaction with the outcome.