
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE FERGUSON FIRM, PLLC, | ) | DIVISION ONE |
| Appellant, | ) | |
| | ) | No. 68329-2-I |
| v. | ) | (Linked with No. 69220-8-I) |
| | ) | |
| TELLER & ASSOCIATES, PLLC | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: December 30, 2013 |
| | ) | |

DWYER, J. — Sandra Ferguson, the principal of The Ferguson Firm, PLLC, spent substantial time and effort developing an employment discrimination case without the assistance of co-counsel. However, by early 2010, she found herself in need of a firm willing to advance litigation costs and—in the event that she was suspended from the practice of law—take responsibility for the case. She approached Stephen Teller, principal of Teller & Associates, PLLC,[1] and the two eventually agreed to work together on the case. Although the two discussed acceptable fee splitting arrangements, they dispute what agreement, if any, was ultimately reached. Subsequently, the Supreme Court suspended Ferguson from practicing law for 90 days. During the period of her suspension, and while Teller was solely representing the clients, a settlement agreement was reached. Thereafter, Ferguson filed an attorney's lien and filed a lawsuit against Teller, claiming that Ferguson was entitled to a substantial percentage of the contingent

---

[1] Sandra Ferguson and Stephen Teller are principals of their eponymous law firms. The firms, not the individuals, are parties to this case. Nevertheless, our opinion will use last names and gendered pronouns when referring to the parties, as well as to the individuals.

fee, not the 50 percent amount that Teller claimed Ferguson was entitled to pursuant to their contract.

The trial court granted in part Teller's motion for judgment on the pleadings and, subsequently, granted Teller's motion for summary judgment, dismissing the case. Because no genuine issues of material fact exist as to whether a valid contract existed between the parties, we affirm the trial court's grant of summary judgment in favor of Teller. We also affirm the trial court's denial of Teller's motion for sanctions, but we do so without prejudice.

I

On August 24, 2009, Ferguson entered into a fee agreement with four women (hereinafter the clients) who eventually became the named plaintiffs in a lawsuit against the ABC Corporation[2] (hereinafter the underlying matter). The clients were female managers who alleged that they had been subject to similar discrimination by the ABC Corporation. Ferguson's fee agreement with the clients provided for a hybrid one-third contingency fee and a flat fee. The agreement did not obligate Ferguson to file a lawsuit or to litigate the case; instead, Ferguson agreed to attempt to negotiate a settlement. Nevertheless, in order to preserve their claims, Ferguson ultimately did file suit on behalf of the clients in February of 2010.

During this time, Ferguson was defending herself against suspension by the Supreme Court. By June 2010, both Ferguson and the clients were aware

---

[2] ABC Corporation is a pseudonym used by the parties, presumably to protect the identity of the corporation.

that she could be suspended at any time thereafter. In part because of the possibility of suspension, Ferguson devoted substantial time to locating competent co-counsel. However, she also wanted to locate a co-counsel willing to advance litigation costs because she was unwilling to advance costs and her clients were either unwilling or unable to pay their own costs. Ferguson approached a number of firms, including Teller's.

In early September 2010, Ferguson and Teller discussed various fee sharing arrangements but did not reach an agreement. With a mediation session imminent, Ferguson e-mailed Teller, "If the mediation does not result in settlement, assuming you are still willing to proceed with me, we would enter into a new fee agreement with [the clients] and with each other." Subsequently, Teller e-mailed Ferguson, "Be sure to let the clients know that I've not taken on any role yet. I think it's a good case and I'd like to be involved if we can work out a fee agreement." In late October, a mediation took place in the underlying matter. However, the mediation concluded without a settlement. One day later, Ferguson again sought Teller's assistance as co-counsel. Ferguson stated that she had reconsidered fee splitting arrangements that the two had discussed previously and determined that her firm "need[ed] to associate with a firm who can advance the costs." Teller agreed, at that point, to advance costs, and evidently Ferguson and Teller discussed a fee splitting arrangement because Teller e-mailed Ferguson on November 10, 2010, stating that, "Our proposed fee split is incorporated into the [attached] retainer for [the clients'] signatures." Teller's proposed fee agreement set forth, in pertinent part, "Teller & Associates,

PLLC, and The Ferguson Firm PLLC, have between them agreed to a 50/50 split of fees, and each firm assumes joint responsibility for the representation." On the same day that Teller sent Ferguson the proposed fee agreement, Ferguson e-mailed the clients stating, "At this point, Steve has agreed to take joint responsibility for your case. His firm and mine will represent you going forward."

On November 18, 2010, Ferguson and Teller met with the clients and provided them with paper copies of the fee agreements; three of the four clients accepted the agreement and one chose not to pursue her claim. On November 22, Teller filed his notice of appearance. Shortly thereafter, Ferguson and Teller exchanged e-mail messages in which Ferguson questioned Teller's commitment to the case:

> Are you in this case for the duration or not? Do you intend to withdraw if this case does not settle in the near future?
>
> Because you said something yesterday, about your other case not settling and you are looking for things to cut out . . . etc . . . which led me to have great concern that you were referring to withdrawing as co-counsel in this case. I need to know now, if that is the case. Or did I misunderstand again?
>
> Your immediate response will be greatly appreciated.

Teller assured Ferguson that he was committed to the case. Subsequently, Teller began working on the case, including expending over $9,000 in costs.

Thereafter, on February 2, 2011, a second mediation was held. This session also failed to result in a settlement. The next day, Ferguson was suspended from practicing law for 90 days. See In re Disciplinary Proceeding Against Ferguson, 170 Wn.2d 916, 246 P.3d 1236 (2011). Ferguson withdrew

from representing the clients and Teller successfully moved for a nine month continuance of the trial date. In late April 2011, while Ferguson was still suspended, the clients entered into a settlement agreement with the ABC Corporation. The settlement resulted in an earned contingency fee of $530,107.58.

On April 11, 2011, Ferguson e-mailed Teller saying that she was "somewhat confused whether *the contract between us* governs the fees I am paid . . . while I am suspended, or whether my fees for work on the case must be based on quantum meruit." (Emphasis added.) Ferguson added that "because the clients have no 'dog in the fight' one way or the other, *the agreement between you and I* would stand and would govern the fee I am paid." (Emphasis added.) On April 15, Ferguson e-mailed Teller saying, "Just so you know, apart from the ethics issue, I may decided [sic] to take the position that I have not obtained the benefit of the bargain we made when we *agreed to the 50/50 arrangement.* I have not yet decided." (Emphasis added.) On April 20th, Ferguson e-mailed Teller, "I am entitled to fees based on quantum meruit. I am not sure I need to repudiate *the 50/50 joint representation agreement we had . . . .*" (Emphasis added.) Ferguson went on to say, "*We entered into our 50/50 joint representation agreement* contemplating the possibility of my suspension" and "*I agreed to that fee split* ONLY because you agreed to advance costs and be equally responsible for the workload . . . ." (Emphasis added.) On April 25, Ferguson e-mailed Teller, "*I agreed that you would receive 50% of the fees* BECAUSE you agreed to take the case forward with me and to advance

costs. *That was the reason for our contract.*" (Emphasis added.)

Thereafter, on April 27, Ferguson filed an attorney's lien asserting that, under a theory of quantum meruit, Ferguson was entitled to 90 percent of the contingent fee earned as a result of the settlement. On May 27, Ferguson filed a lawsuit against Teller. Ferguson asserted four causes of action: (1) a declaratory judgment as to whether a fee agreement existed, (2) a declaratory judgment as to whether quantum meruit was appropriate, (3) breach of contract, and (4) negligent misrepresentation. By stipulation, the amount of the contingent fee was deposited into the King County Superior Court registry on July 18, 2011.

Teller subsequently moved for judgment on the pleadings pursuant to CR 12(c). During the hearing on this motion, Ferguson's counsel, Brian Waid, conceded Ferguson's breach of contract claim. There is no indication that Ferguson, who was present at the hearing, objected to this concession. Thereafter, the trial court granted Teller's CR 12(c) motion, but only with respect to Ferguson's breach of contract and negligent misrepresentation claims. In a subsequent letter to the parties, the trial judge wrote, "Mr. Waid did state that Plaintiff was withdrawing her claim for breach of contract based on the authority cited in Defendant's CR 12(c) motion, specifically <u>Mazon v. Krafchick</u>, 158 Wn.2d 440, 144 P.3d 1168 (2006). The court dismissed the claim of negligent misrepresentation based on that same authority."

Thereafter, Teller moved for summary judgment, seeking a declaratory judgment that "(1) an express fee agreement existed between Defendant Teller and Plaintiff Ferguson and (2) Ferguson's claim for compensation in *quantum*

-6-

*meruit* must be dismissed." Ferguson filed a cross-motion for summary judgment. At oral argument, the trial court ruled that Teller had "established as a matter of law the existence of an express contract between the parties to divide attorney fees 50/50." Three days later, the trial court granted summary judgment in favor of Teller with respect to the "issue of whether Ferguson's suspension from the practice of law was a condition subsequent that rendered their agreement unenforceable so that attorney fees should be divided on a *quantum meruit* basis." Ferguson moved for reconsideration,[3] which the trial court denied on February 16, 2012.

On February 9, 2012, Teller moved for an award of fees and costs pursuant to CR 11 and RCW 4.84.185. The trial court denied Teller's motion, and Teller timely appealed.

On February 15, Ferguson's attorney, Waid, filed a notice of intent to withdraw. He also filed a declaration and attachments, wherein he documented the circumstances of his withdrawal, including allegations that Ferguson had deceived the court. Waid was replaced by Ferguson's current counsel. Ferguson timely appealed the trial court's rulings in Teller's favor.

II

As a preliminary matter, we refuse to consider Ferguson's declaration in support of her motion for reconsideration. Her declaration contained new evidence, which implicated new theories of the case, neither presented to nor considered by the trial court prior to its ruling on summary judgment.

---

[3] Ferguson failed to include her motion for reconsideration in our Clerk's Papers.

"On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." RAP 9.12. A litigant may not make arguments on a motion for reconsideration that are "based on new legal theories with new and different citations to the record." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). "CR 59 does not permit a plaintiff to propose new theories of the case that could have been raised before entry of an adverse decision." Wilcox, 130 Wn. App. at 241.

Ferguson contends that she provided additional evidence after summary judgment because she was not yet aware of Waid's asserted conflict of interest, and of an alleged scheme to interfere with her attorney-client relationship. Regardless of whether Ferguson's allegations in the declaration are true, they have no bearing on the trial court's summary judgment order, which addressed whether Ferguson and Teller had formed a contract. Accordingly, our review is circumscribed to the evidence called to the attention of the trial court prior to the entry of its order on summary judgment.

III

Ferguson contends that the trial court erred by dismissing the breach of contract and negligent misrepresentation claims. This is so, Ferguson asserts, because the trial court's ruling was not based on the legal standards for dismissal under CR 12(c) but, instead, on Waid's erroneous concession that the breach of contract claim was legally baseless. This claim is unavailing.

"We review de novo a trial court's order for judgment on the pleadings."

Pasado's Safe Haven v. State, 162 Wn. App. 746, 752, 259 P.3d 280 (2011).

"Absent fraud, the actions of an attorney authorized to appear for a client are binding on the client at law and in equity." Rivers v. Wash. State Conference of Mason Contractors, 145 Wn.2d 674, 679, 41 P.3d 1175 (2002). "The 'sins of the lawyer' are visited upon the client." Rivers, 145 Wn.2d at 679 (quoting Taylor v. Ill., 484 U.S. 400, 433, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (Brennan J., dissenting)).

Ferguson's attorney, Waid, conceded the breach of contract claim on the record:

> We did allege breach of contract, and I have my client's authorization to do this. I will – I will concede the defendant's argument that under Mazon vs. Krafchick – and I've lectured about that case before – that under Mazon vs. Krafchick we cannot prove a breach of contract. I think that's also significant to the 12(b)(6) motion that Your Honor will consider that's noted on Tuesday.

Subsequently, the trial court granted in part Teller's motion for judgment on the pleadings with respect to Ferguson's breach of contract and negligent misrepresentation claims, dismissing them both. Nevertheless, Ferguson now asserts that Waid's concession was a clear error of law, claims that Waid's concessions violated the rules of professional conduct, and proceeds to address the merits of the legal position that Waid declined to take.

Ferguson authorized Waid's concession by allowing him to appear as her representative and by refusing to contest his concession in the trial court. Waid's concession is binding upon Ferguson, regardless of whether Waid's legal

analysis was flawed.[4] Accordingly, Ferguson's arguments regarding the merits of the legal position Waid declined to take are unavailing. In the trial court, Waid did not take a legal position on the breach of contract claim, but instead conceded that the claim was not viable. By doing so, he waived the opportunity for Ferguson to argue the merits both in the trial court and on appeal. The trial court properly dismissed the breach of contract claim.

The trial court also properly dismissed Ferguson's negligent misrepresentation claim in light of Mazon v. Krafchick, 158 Wn.2d 440, 144 P.3d 1168 (2006). Mazon stands for the proposition that co-counsel may not sue each other to recover lost or reduced prospective fees. Mazon, 158 Wn.2d at 448. The gravamen of Ferguson's claim is that Teller misrepresented his intention to prepare for trial and advance costs and, instead, focused his efforts on effectuating a settlement. From this, Ferguson asserts that she is entitled to all damages proximately caused by Teller's misrepresentation. In effect, Ferguson asks for the difference between what she earned by virtue of the clients settling and what she could have earned had the case been taken to trial, with a better result being achieved. What Ferguson seeks to recover is lost prospective fees, which Mazon prohibits. Accordingly, the trial court did not err.

IV

Ferguson next contends that the trial court erred by granting summary

---

[4] Even if Waid's concession violated the Rules of Professional Conduct, which we do not assume, such a violation would not form the basis for an appellate challenge to Waid's trial court legal strategy. See Hizey v. Carpenter, 119 Wn.2d 251, 261-62, 830 P.2d 646 (1992) (explaining that the Rules of Professional Conduct are not statutes promulgated by the legislature and are not intended as a basis for civil liability).

- 10 -

judgment in favor of Teller on the issue of whether Ferguson and Teller contracted to evenly split the contingency fee. This is so, she reasons, because the trial court resolved genuine issues of material fact in favor of Teller. We disagree.

This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. Snohomish County v. Rugg, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002). Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). On a summary judgment motion, the trial court must review all evidence in the light most favorable to the nonmoving party. Lamon v. McDonnell Douglas Corp., 91 Wn.2d 345, 350, 588 P.2d 1346 (1979). The motion should be granted when a reasonable person could reach only one conclusion. Lamon, 91 Wn.2d at 350.

"Washington follows an objective manifestation test for contracts, looking to the objective acts or manifestations of the parties rather than the unexpressed subjective intent of any party." Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 699, 952 P.2d 590 (1998).

Ferguson asserts five reasons for why the trial court improperly granted summary judgment on the issue of contract formation: (1) the trial court disregarded evidence that Ferguson rejected the draft retainer agreement that Teller presented to the clients; (2) the trial court disregarded evidence that Teller knew that Ferguson had another attorney to handle the case in the event of her suspension; (3) the trial court disregarded evidence that Ferguson and Teller

- 11 -

intended to negotiate a separate written co-counsel agreement; (4) the trial court decided the ultimate issue when it held that Teller substantially performed; and (5) Ferguson's and Teller's words and conduct establish that there was no fee-sharing contract. Each of these assertions will be addressed in turn.

First, Ferguson's present assertion that she ultimately rejected the retainer agreement Teller presented to the clients does not establish trial court error. Ferguson repeatedly confirmed the existence of a contract in a series of e-mail exchanges[5] and presents no evidence of objective manifestations indicating otherwise.

Second, Ferguson's assertion that Teller knew that Ferguson had another attorney to handle the case if she was suspended also does not establish trial court error. The e-mail Ferguson cites in support of this claim actually refutes her position: "*Prior to mediation*, however, I think I need my own attorney, Shawn Newman, to be my back-up should I get suspended." (Emphasis added.) This e-mail was sent several months before the fee agreement at issue was executed, and Ferguson's statement explicitly addresses the relevant time period as being "prior to mediation." Ferguson's objective manifestations following mediation indicate that circumstances changed when the case failed to settle; indeed, Ferguson's e-mail messages to Teller admitting that they had a contract belie the suggestion that evidence of this earlier e-mail created a genuine issue of material fact.

Third, no trial court error is apparent from Ferguson's assertion that she

---

[5] See supra pp. 5-6.

intended, and that Teller understood, that they would enter into a written co-counsel agreement separate from the contract with the clients. Ferguson e-mailed Teller, "If the mediation does not result in settlement, assuming you are still willing to proceed with me, we would enter into a new fee agreement with them and with each other." This language, coupled with Ferguson's assertion that she has employed separate co-counsel agreements in the past,[6] does suggest that Ferguson, at one time, contemplated entering into a separate co-counsel agreement. However, the numerous e-mail messages sent by Ferguson following the presentation of Teller's retainer agreement to her and to the clients, wherein she acknowledges the existence of a contract, could lead a reasonable person to only one conclusion—that the retainer agreement drafted by Teller constituted a contract between the attorneys.

Fourth, the trial court did not improperly decide the ultimate issue of whether Teller lived up to his end of the bargain. This is so because Ferguson provided no evidence that Teller failed to advance litigation costs or was unwilling to advance costs in an amount equal to that which Ferguson had contemplated. The parties did not specify that Teller had to pay a certain amount of costs in order to perform pursuant to the contract. Moreover, there is no evidence that the parties ever intended to make substantial performance under the contract contingent upon paying a certain amount of money other than simply "litigation costs." The case settled before Teller had advanced the amount of money

---

[6] Ferguson stated that she has used separate co-counsel agreements both with Teller and with other attorneys.

Ferguson had, perhaps, contemplated. However, Teller did advance costs and represented the clients, leading to the clients' decision to settle. The contract did not require more.

Fifth and finally, the parties' words and conduct after the fee agreement was signed by the clients did not establish the absence of a contract. Ferguson asserts that Teller's response to Ferguson's e-mail sent on December 8, 2010, wherein she asked whether Teller was planning to withdraw, shows that both parties thought that he could withdraw without breaching a contract. This e-mail exchange does not accomplish what Ferguson wants it to—Teller merely says he does not plan to withdraw. Furthermore, the numerous e-mail messages referring explicitly to the existence of a contract establish that the parties understood that they had an agreement. This e-mail exchange is not inconsistent with the parties' objective manifestations indicating that a contract was formed.

Ultimately, the objective manifestations of the parties reveal that both intended to contract for a 50/50 fee splitting arrangement. Accordingly, the trial court did not err when it held that there was a contract to that effect, and it did not improperly resolve genuine issues of material fact when it ruled in favor of Teller.

V

Ferguson next contends that the trial court erred by granting summary judgment in favor of Teller on the issue of whether the contract was enforceable against Ferguson as a matter of law. This is so, she asserts, because Teller failed to provide consideration for the fee agreement, because Ferguson

- 14 -

"substantially performed," and because the agreement violated public policy pursuant to RPC 1.5(e). We disagree.

Ferguson first contends that Teller failed to provide consideration for the fee agreement. This is so, she reasons, because the amount of costs that Teller advanced was miniscule when compared to the amount that Ferguson anticipated he would advance. Ferguson's contention lacks merit.

"Consideration is a bargained-for exchange of promises." Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 833, 100 P.3d 791 (2004). Determining whether consideration supports a contract is a question of law. Hanks v. Grace, 167 Wn. App. 542, 548, 273 P.3d 1029, review denied, 175 Wn.2d 1017 (2012). "Courts generally do not inquire into the adequacy of consideration and instead utilize a legal sufficiency test" which "'is concerned not with comparative value but with that which will support a promise.'" Labriola, 152 Wn.2d at 834 (quoting Browning v. Johnson, 70 Wn.2d 145, 147, 422 P.2d 314, 430 P.2d 591 (1967)). We will "not relieve a party of a bad bargain . . . unless the consideration is so inadequate as to constitute constructive fraud." Emberson v. Hartley, 52 Wn. App. 597, 601, 762 P.2d 364 (1988).

Ferguson fails to perceive the distinction between adequacy and sufficiency of consideration. Adequacy deals with the comparative value of the exchanged acts or promises, whereas sufficiency deals with that which will support a promise. We will not invalidate a contract for insufficient consideration merely because the parties exchanged acts or promises that differed in comparative value. So long as the consideration exchanged will support the

promise, the consideration is sufficient. Nevertheless, Ferguson argues, in effect, that we should invalidate the contract because Teller paid very little yet profited considerably when the clients decided to settle. Implicit in her position is that Teller did not give comparative value for what he received, or, stated differently, that Teller did not give adequate consideration. However, the consideration provided by Teller does not suggest constructive fraud and, absent evidence to the contrary, we find no need to inquire into adequacy. Ferguson and her clients determined that they needed someone to finance the litigation and, to that end, contracted with Teller to advance costs. The fact that Teller received a good deal when the clients chose to settle does not mean that the consideration he provided was inadequate.

Ferguson next contends that she "substantially performed" and should, therefore, receive one-third of the second settlement offer that the clients rejected. The basis for her claim is that she procured two sizeable settlement offers, ultimately rejected by the clients, prior to the case being settled. Her contention lacks merit.

"It has long been the rule in this state that where the compensation of an attorney is to be paid contingently, and the attorney is discharged prior to the occurrence of the contingency, the measure of the fee is not the contingent fee agreed upon but reasonable compensation for the services actually rendered." Barr v. Day, 124 Wn.2d 318, 329, 879 P.2d 912 (1994). The "substantial performance" exception to the general rule that clients may fire their attorneys at any time with or without cause is meant to protect attorneys from their clients.

- 16 -

Barr, 124 Wn.2d at 329.

Ferguson's contention is unavailing because she was not fired by her clients—she was forced to withdraw due to her suspension by the Washington State Supreme Court. The "substantial performance" exception is designed to protect attorneys from clients, not attorneys from other attorneys. More specifically, the exception protects attorneys from clients, with whom lies the authority to accept or reject a settlement offer,[7] who would seek to unjustly enrich themselves by firing their attorney immediately prior to accepting a settlement offer. Because Teller could not accept or reject a settlement offer without the clients' authorization, there is no reason to extend this exception to protect Ferguson from Teller. Accordingly, Ferguson may not avail herself of the "substantial performance" exception.

Ferguson finally contends that the fee division violates public policy as expressed by RPC 1.5(e). This is so, she avers, because (1) Ferguson and Teller did not sign the retainer agreement; (2) the retainer agreement did not fully disclose to the clients, in writing, Teller's duty to advance litigation costs; and (3) Ferguson's suspension ended joint responsibility. Her contention lacks merit.

"Attorney fee agreements that violate the RPCs are against public policy and unenforceable." Valley/50th Ave., LLC v. Stewart, 159 Wn.2d 736, 743, 153 P.3d 186 (2007). RPC 1.5(e) allows for nonproportional fee agreements between attorneys, subject to some restrictions:

(e) A division of a fee between lawyers who are not in the

---

[7] "A lawyer shall abide by a client's decision whether to settle a matter." RPC 1.2(a).

same firm may be made only if:

> (1) (i) the division is in proportion to the services provided by each lawyer or each lawyer assumes joint responsibility for the representation;
>
> > (ii) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and
> >
> > (iii) the total fee is reasonable.

RPC 1.5 (e).

Ferguson first contends that both she and Teller were required to sign the fee agreement. Neither RPC 1.5(e) nor Comment 7[8] to the rule includes such a requirement, and Ferguson has failed to provide a compelling reason why this court should read into the rule such a requirement.

Ferguson next contends that the retainer agreement did not fully disclose Teller's duty to advance litigation costs. Neither RPC 1.5(e) nor Comment 5[9] to the rule includes such a requirement. Ferguson asserts that the contract violated the rule because Teller had a strong incentive to settle the case; however, her assertion disregards the fact that the clients have the ultimate authority to authorize a settlement. RPC 1.2(a). Neither the letter nor the spirit of RPC 1.5(e) required the attorneys to disclose to the clients that Teller would pay for all litigation costs.

Ferguson finally contends that her suspension ended her joint responsibility with Teller. WSBA Advisory Opinion 1522 states, "The Committee

---

[8] "[T]he client must agree to the arrangement, including the share that each lawyer is to receive, and the agreement must be confirmed in writing."

[9] "An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest."

was of the unanimous opinion that 'joint responsibility' as used in RPC 1.5(e)(2) refers to legal liability to see that the client's work is competently performed." The term "legal responsibility" does not involve the practice of law. See Elane v. St. Bernard Hosp., 284 Ill. App. 3d 865, 872, 672 N.E.2d 820 (1996) (a former lawyer who became a judge sought enforcement of a fee agreement even though she could no longer practice law). There appears to be no meaningful distinction between "legal liability" and "legal responsibility" in this context. Therefore, the fact that Ferguson was suspended from practicing law did not mean that she no longer had "legal liability" with respect to the clients in the underlying matter. Accordingly, the fee does not, as Ferguson asserts, violate public policy as expressed by RPC 1.5(e).

VI

Ferguson next contends that she is entitled to choose between a quantum meruit method of fee division or a lodestar fee calculation. This is so, she reasons, because her fee agreement with Teller permits her to elect between these methods of fee calculation. We disagree.

The contract provision invoked by Ferguson reads, in pertinent part, as follows:

> 6. **DISCHARGE**: If client discharges attorneys, or if attorneys withdraw for cause (e.g., dishonesty of client), client agrees to pay attorneys a reasonable attorney fee and any non-reimbursed costs. The attorney fee shall be, at attorney's option, either (a) an hourly fee for the attorney time expended at $345.00 per hour for Mr. Teller or Ms. Ferguson . . .; (b) contingency percentage computed from the last settlement offer; or (c) a pro-rata portion of the contingent fee ultimately recovered based on relative contributions to the case by the lawyers and any successor

- 19 -

law firm as determined by Washington law and the factors set out in the Rule of Professional Conduct 1.5(a).

Ferguson is incorrect because this provision, by its terms, applies if *attorneys* withdraw for cause. Only Ferguson withdrew. Accordingly, Teller is not, as Ferguson claims, the "successor law firm." A successor law firm would be a firm that would take over the case after both Ferguson and Teller withdrew for cause. Because only Ferguson withdrew, she may not avail herself of this contract provision.

## VII

Teller contends that we should sanction Ferguson for the manner in which she has conducted this appeal and that we should reverse the trial court's order denying sanctions and remand in light of newly discovered evidence. We decline to sanction Ferguson for her conduct of this appeal. Further, we affirm the trial court's denial of Teller's request for sanctions. However, we affirm the trial court's order without prejudice. In rendering our decision, we do not intend for the law of the case doctrine to preclude Teller, if he chooses to do so, from presenting new evidence to the trial court in support of a new request for sanctions.

Affirmed.

We concur:

- 20 -