# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

KAREN HUDSON,

          Plaintiff,

        v.

ARDENT LAW GROUP, PLLC; COLIN
GEORGE; and WILLIAM WEINSTEIN,

          Defendants.
_____

ARDENT LAW GROUP, PLLC; COLIN
GEORGE; and WILLIAM WEINSTEIN,

          Respondents/Cross-Appellants,

        v.

DAVID DOUGLAS HANCOCK,

          Appellant/Cross-Respondent.

No. 82756-1-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, J. — This appeal arises from a dispute between a lawyer and his former law firm employer. A jury found that David Hancock misappropriated trade secrets and breached a fiduciary duty owed to his employer Ardent Law Group (Ardent). Hancock

argues that the trial court erred (1) in restricting the scope of his license to practice law, (2) in refusing to give Hancock's proposed jury instructions addressing the entrepreneurial aspects of legal practice, (3) in refusing to give Hancock's proposed jury instructions on a lawyer's fiduciary duties, (4) by releasing Ardent from its burden of proving damages, (5) by granting Ardent's day of trial motion to dismiss certain claims, and (6) by awarding attorney fees to Ardent.

Ardent cross appeals, arguing that the trial court erred by (1) declining to dismiss with prejudice claims not pursued by Hancock at trial, (2) awarding attorney fees to Hancock related to a motion to compel discovery, and (3) declining to award statutory damages and attorney fees for dismissing Hancock's defamation claim. Ardent also requests attorney fees on appeal.

We reverse the trial court's award of attorney fees to Ardent, reverse the dismissal of Hancock's claims against Ardent without prejudice, and remand for the trial court to dismiss the claims with prejudice. We otherwise affirm.

I.

Ardent[1] is a law firm that specializes in assisting consumers with real estate time share disputes.[2] Ardent began its practice around June 1, 2019. Ardent's owners are attorneys William Weinstein and Colin George. George is Ardent's managing member. Hancock is an attorney employed by Ardent from June to October 2019. Hancock was not an owner of Ardent.

---

[1] In February 2020, Ardent changed its name to Granite Spire Law Group, PLLC to avoid confusion with a law firm in California. The parties used the name Ardent throughout the litigation and we follow suit.

[2] The facts are taken largely from the trial court's unchallenged findings of fact.

Ardent collects large amounts of client data through online forms, telephone interviews, and document review. The data is stored electronically, is password protected, and is to be used only for providing services on behalf of Ardent to Ardent clients. As of October 2019, Ardent had a client list of around 1,600 current and prospective clients.

In late October 2019, George underwent a scheduled double hip replacement surgery. George asked Hancock to supervise Ardent employees during his recovery. Before George's departure, Hancock downloaded all of Ardent's client data and sent it to his personal e-mail address. This data had required months of work by Ardent employees to create.

During George's absence, Hancock took several employees into his confidence and told them he was planning to issue an ultimatum to George and Weinstein: if they did not agree to step away from the firm for one year, Hancock would sue them and disclose purportedly damaging information about Ardent to its clients. Hancock told the employees that they would make more money if he were in control of Ardent and that if George and Weinstein failed to relinquish control, he would start a new firm that would represent Ardent's clients. Hancock directed an Ardent employee to create a new public website displaying Hancock's work for Ardent clients, specifically marketing Hancock to Ardent clients.

On October 23, 2019, Hancock e-mailed one or more Ardent clients with disparaging allegations against George and Weinstein. Two days later, Hancock e-mailed George and assured him that "[t]hings here are running smoothly enough." On

October 27, 2019, Hancock took flowers to George's house and the two men had lunch together.

Early the next morning, Hancock spoke to Ardent client Dr. Karen Hudson and persuaded her to file a complaint against Ardent, George, and Weinstein. Hancock e-mailed Dr. Hudson confirmation of their agreement from his Ardent e-mail account and signed the e-mail as an employee of Ardent. About an hour later, Hancock convened a meeting of Ardent employees and announced that he planned to have the firm shut down and placed into receivership.

An employee alerted Weinstein, who was working in a different part of the building, of the situation. Weinstein went to Hancock's office and told Hancock that he wanted to talk with him. Hancock declined to have a substantive conversation with Weinstein and announced he was resigning. As he was leaving, Hancock grabbed a box from his office containing client files and documents, including checks written by clients. Hancock returned to Ardent's office shortly afterward and tried to gain entry. He was met by officers from the Seattle Police Department and escorted from the premises.

Immediately following his resignation, Hancock established his own law practice and, since then, has operated as a competitor to Ardent.

Shortly after Hancock's resignation, counsel for Ardent asked Hancock to list the client documents he had taken and return them. Hancock returned the client checks he had taken but did not provide any information on the other client materials he had taken.

On November 14, 2019, Hancock sued Ardent, George, and Weinstein on behalf of Dr. Hudson. On November 21, 2019, Hancock used the Ardent client data in his

possession to send a disparaging e-mail to Ardent's clients claiming Ardent had improperly withheld information from them, was disloyal to them, and did not represent their best interests.  The e-mail provided George's personal cell phone number and provided a series of questions clients could ask George if they contacted him.  The e-mail also threatened to keep disparaging Ardent to its clients.

On November 25, 2019, Ardent filed a third-party complaint against Hancock, alleging claims for indemnification, misappropriation of trade secrets, tortious interference with contractual relationships, breach of fiduciary duty, defamation, and invasion of privacy.  The complaint sought damages and injunctive relief.  That same day, the trial court granted Ardent's motion for a temporary restraining order prohibiting Hancock from contacting Ardent's clients using the client data pending a hearing on a preliminary injunction.  After a show cause hearing, the trial court granted the preliminary injunction requiring Hancock to return client lists and information to Ardent and to retain no copies of such information.

Hancock unsuccessfully sought discretionary review of the preliminary injunction with this court.[3]  At trial, Hancock admitted that he did not return the Ardent client data until sometime in May.  Ardent had no reliable way of determining whether Hancock complied with the preliminary injunction.

On January 14, 2020 the trial court granted Dr. Hudson's motion for voluntary dismissal of her claims against Ardent, George, and Weinstein.

Ardent's claims against Hancock were tried before a 12-person jury.  The jury found that Ardent proved its claim against Hancock for misappropriation of trade secrets

_____
[3] Case No. 80979-2-1-I.

and breach of fiduciary duty. On May 10, 2021, the trial court entered findings of fact and conclusions of law and judgment. The judgment included a permanent injunction.

Hancock appeals. Ardent cross appeals.

II.

A.

Hancock argues that the trial court erred by entering a permanent injunction that restricted the scope of his law practice. We disagree.

We review the trial court's decision to grant a permanent injunction for an abuse of discretion. Wash. Fed'n of State Emps. v. State, 99 Wn.2d 878, 887, 665 P.2d 1337 (1983). A permanent injunction may be issued for misappropriation of trade secrets. RCW 19.108.020.[4]

Based on the jury's verdict and the trial court's findings and conclusions, the trial court entered a permanent injunction that prohibits Hancock from:

(a) Representing any former clients of Ardent who were clients as of October 28, 2019, with respect to matters directly adverse to the interests of Ardent, that were the subject of this lawsuit.

(b) Retaining or making use of any Ardent confidential information that was, is or is hereafter within David Hancock's possession or control.

Hancock argues that the injunction limits the scope of his law practice and that regulating the practice of law in Washington is within the exclusive and inherent power of the Supreme Court. Hancock relies on Chism v. Tri-State Constr., Inc., 193 Wn. App. 818, 374 P.3d 193 (2016), and LK Operating, LLC v. Collection Grp., LLC, 181 Wn.2d

---

[4] Under RCW 19.108.020, actual or threatened misappropriation of trade secrets may be enjoined.

48, 65, 331 P.3d 1147 (2014), to support his argument. Both cases are readily distinguishable.

In Chism, a jury awarded an attorney $750,000 for breach of compensation contracts by his former employer. 193 Wn. App. at 822. The trial court significantly reduced the damage award premised on findings that the attorney had violated Washington's Rules of Professional Conduct (RPCs) during his time as in-house counsel for the employer. Chism, 193 Wn. App. at 822. This court reversed, concluding that the trial court exceeded its disciplinary authority delegated by the Supreme Court. Chism, 193 Wn. App. at 844.

Hancock quotes LK Operating for the proposition that a lawyer's "'license to practice law [could] not be limited in any way as a direct consequence of this [civil] proceeding.'" 181 Wn.2d at 68. Hancock reads this statement out of context. The issue in LK Operating was whether a business transaction should be rescinded because the attorney did not disclose his personal interest in the transaction between two of his clients in violation of former RPC 1.8(a). 181 Wn.2d at 74. On appeal, the attorney raised a procedural due process challenge. 181 Wn.2d at 66. In its analysis of that claim, the Supreme Court explained that due process concerns may be implicated in the attorney discipline context where a respondent attorney may be subject to limitations on the license to practice law, but that the attorney's "license to practice law cannot be limited in any way as a direct consequence of this proceeding." LK Operating, 181 Wn.2d at 68. In fact, the Supreme Court affirmed this court's holding that the recession of the business transaction was appropriate because of the attorney's violation of former RPC 1.8(a). LK Operating, 181 Wn.2d at 94.

Both Chism and LK Operating are inapposite. Here, the jury found that Hancock misappropriated trade secrets. As a result, and as permitted by the Uniform Trade Secrets Act (UTSA), RCW 19.108.020(1), Ardent sought a permanent injunction against Hancock. The trial court found that an injunction was appropriate "both with respect to Mr. Hancock's direct representation of former clients, in reference specifically to matters that are adverse to Ardent's interest, and with respect to Mr. Hancock being a witness in matters related to this particular litigation."

This was not a lawyer disciplinary hearing and the injunction was narrowly tailored to the information that the jury found Hancock misappropriated. The trial court did not abuse its discretion.[5]

B.

In his third assignment of error, Hancock asserts that the trial court erred by finding that the UTSA regulates the practice of law. While Hancock fails to cite to the record where the trial court made this alleged finding, he cites instead to two of his proposed jury instructions that were rejected by the trial court. Hancock argues that the trial court's jury instructions on Ardent's claim for misappropriation of trade secrets failed to instruct the jury about "the entrepreneurial aspects" of the legal profession. We disagree.

A trial court's decision not to issue a jury instruction is reviewed for abuse of discretion. Stiley v. Black, 130 Wn.2d 486, 498, 925 P.2d 194 (1996). The court has

---

[5] Hancock also contends that the injunction harms third parties because it limits the freedom of clients to select their lawyer of choice. He relies solely on RPC 5.6 which restricts a lawyer from participating in offering or making an agreement restricting the right of a lawyer to practice after termination of a partnership or employment agreement. Nothing in RPC 5.6 prohibits the trial court from issuing a narrowly tailored injunction for tortious acts because of alleged injury to third parties.

wide discretion in deciding "whether to give a particular instruction." Terrell v. Hamilton, 190 Wn. App. 489, 498, 358 P.3d 453 (2015). "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). A trial court need never give a requested instruction that is erroneous in any respect. Hendrickson v. Moses Lake Sch. Dist., 192 Wn.2d 269, 278, 428 P.3d 1197 (2018).

For Ardent's claim for misappropriation of trade secrets, the trial court instructed the jury based on the Washington Pattern Jury Instructions for trade secrets, including the standard definitions for "trade secret," "misappropriation," "improper means," "independent economic value," and "reasonable efforts to maintain secrecy." 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 351.01-.05, .08, (7th ed. 2012) (WPI).

The trial court instructed the jury, in part:

Ardent asserts a claim against David Hancock for misappropriation of trade secrets. To establish its claim for misappropriation of trade secrets, Ardent has the burden of proving each of the following:

(1) That Ardent had a trade secret;
(2) That Mr. Hancock misappropriated Ardent's trade secret; and
(3) That Mr. Hancock's misappropriation was a proximate cause of damages to Ardent.

Hancock proposed adding an element requiring Ardent to prove: "Mr. Hancock took these actions in the entrepreneurial aspect of his legal practice."[6] Hancock also

_____

[6] The proposed instruction reads in full:
To prevail on its claim for violation of the Uniform Trade Secrets Act, Ardent Law Group must prove each of the following elements by a preponderance of the evidence: (1) David Hancock knowingly misappropriated information; (2) the information was a trade secret;

-9-

proposed an instruction stating: "A lawyer's actions fall with the entrepreneurial aspect of law when they involve the manner in which the lawyer (a) obtains, retains and dismisses clients, and (b) determines, bills, and collects the price of the legal services." The trial court rejected both of Hancock's proposed additions.

Hancock appears to argue that without his added language about the entrepreneurial aspects of law, the legislature's enactment of the UTSA has impermissibly regulated the practice of law. Hancock relies on Short v. Demopolis, 103 Wn.2d 52, 691 P.2d 163 (1984). Hancock's reliance is misplaced.

In Short, the Supreme Court first addressed whether the practice of law fell within "trade or commerce" as defined by the Consumer Protection Act (CPA), ch. 19.86 RCW.[7] 103 Wn.2d at 55. If an act or practice does not occur "in the conduct of any trade or commerce," the act or practice is outside the scope of the CPA.

The Supreme Court found that "certain entrepreneurial aspects of the practice of law may fall within the 'trade or commerce' definition of the CPA." Short, 103 Wn.2d at 60. This includes how the price of legal services is determined, billed, and collected, and the way the law firm obtains, retains, and dismisses clients. Short, 103 Wn.2d at 61. But here, the definition of trade or commerce is irrelevant under the UTSA because UTSA does not include a "trade or commerce" requirement.

The Supreme Court next addressed "whether the application of the CPA to attorneys would be an unconstitutional legislative invasion of the jurisdiction of the

---

(3) the trade secret belonged to Ardent Law Group; (4) Mr. Hancock took these actions in the entrepreneurial aspect of his legal practice; and (5) Mr. Hancock thereby caused harm to Ardent.

[7] RCW 19.86.020 provides: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

Supreme Court in its power to regulate the practice of law." Short, 103 Wn.2d at 62.

Recognizing its exclusive power to admit, suspend, or disbar, attorneys, the court held

that "the CPA does not trench upon the constitutional powers of the court to regulate the

practice of law." Similarly, the UTSA does not violate the separation of powers doctrine,

because, like the CPA, it does not purport to take away the Supreme Court's power to

admit, suspend, or disbar attorneys.

Hancock's proposed instructions were not a correct statement of the law. The

trial court did not abuse its discretion in rejecting Hancock's requested instructions.

C.

In his fourth assignment of error, Hancock asserts that the trial court "erred by

finding that a lawyer's fiduciary duty to his clients is irrelevant to his fiduciary duty to his

employer." Once again Hancock fails to cite to the record where the trial court made

this alleged finding. In a footnote, Hancock instead cites three of his proposed jury

instructions rejected by the trial court. Again, the trial court did not abuse its discretion

in rejecting Hancock's proposed instructions.

1.

For Ardent's claim for breach of fiduciary duty, the trial court instructed the jury

based on the Washington Pattern Jury Instructions for breach of fiduciary duty. WPI

107.10; Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP, 110 Wn. App. 412,

433-34, 40 P.3d 1206 (2002). Instruction 12 provided, in relevant part:

> To establish its claim for breach of fiduciary duty, Ardent has the burden of
> proving each of the following:
>
> (1) That Mr. Hancock owed a fiduciary duty of loyalty to Ardent;
> (2) That Mr. Hancock breached his fiduciary duty of loyalty to Ardent;

(3) That Ardent was injured; and

(4) That the violation of the fiduciary duty of loyalty was a proximate cause of Ardent's injury.

Hancock did not object.

Hancock instead argues that the trial court should have also given three additional instructions. Hancock's first proposed instruction would have required Ardent to prove that "Hancock intentionally breached his fiduciary duty of loyalty to Ardent" and that his breach was without valid justification. This is not an accurate statement of the law. First, a breach of fiduciary duty may arise out of negligent, as opposed to intentional, conduct. See Arden v. Forsberg & Umlauf, P.S., 189 Wn.2d 315, 327, 402 P.3d 245, 251 (2017) (claim for breach of fiduciary duties "necessarily focuses on negligence in the representation"). Second, the fact that a fiduciary acted with good intentions or with a good motive is not relevant to a claim for breach of fiduciary duty under Washington law. See Leppaluoto v. Eggleston, 57 Wn.2d 393, 402, 357 P.2d 725 (1960). The trial court did not err in refusing the instruction. Hendrickson, 192 Wn.2d at 278.

Hancock's second proposed instruction stated: "A lawyer cannot accept any professional duty that creates a risk that the lawyer will breach a fiduciary duty to a client." Hancock argues that this proposed instruction was taken from Mazon v. Krafchick, 158 Wn.2d 440, 448-49, 144 P.3d 1168 (2006). But in Mazon, the court addressed the narrow issue of whether one attorney may sue his co-counsel for breach of fiduciary duty to recover a prospective fee that the attorney lost as a result of his co-counsel's professional negligence. 158 Wn.2d at 448. The Supreme Court agreed with the Court of Appeals that "'[p]ublic policy prohibits an attorney from owing a duty to

-12-

anyone other than the client when the collateral duty creates a risk of divided loyalty to conflicts of interest or breaches of confidence.'" Mazon, 158 Wn.2d at 448 (quoting Mazon v. Krafchik, 126 Wn. App. 207, 216-17, 108 P.3d 139 (2005)). It adopted a "bright-line rule that no duties exist between co-counsel that would allow recovery for lost or reduced prospective fees." Mazon, 158 Wn.2d at 448. It did so based on the principle that "both attorneys owe an undivided duty of loyalty to the client" and "the decisions about how to pursue a case must be based on the client's best interests, not the attorneys'." Mazon, 158 Wn.2d at 448.

Even if Hancock's proposed instruction is a correct statement of the law, he fails to demonstrate how this legal principle applies to the facts of this case. In this case, Ardent identified four actions by Hancock that supported its breach of fiduciary duty claim: first, Hancock met "secretly with employees and [tried] to engage them in an insurrection against management"; second, Hancock entered into a representation agreement with an Ardent client in which he agreed to sue the law firm on that client's behalf while still employed by Ardent; third, Hancock sent Ardent clients emails in which he disparaged the law firm; and finally, Hancock misappropriated the law firm's trade secrets. The trial court found that "a reasonable person in Hancock's position could not have believed that they had the right to mislead Ardent management, while attempting to take control of Ardent, and use their position of trust at Ardent to start a competing law firm, using misappropriate client lists." Hancock has not explained how his legal obligation to refrain from this conduct vis-à-vis his employer created a risk that he would breach a duty of loyalty he owed to his clients.

Hancock's third proposed instruction asserted that Ardent owned a duty of fairness and good faith to Hancock and that if the jury found that Ardent breached its duty to Hancock and the breach resulted in Hancock's breach of his duty to Ardent, then the jury should find against Ardent. Hancock relies on Restatement (Third) of Agency, § 8.15, cmt. d (AM. L. INST. 2006), for the proposition that a principal has a duty to refrain from conduct that injures an agent's "reasonable self-respect." This principle derives from Restatement (Second) of Agency, § 437 (AM. L. INST. 1958), which provides that "[u]nless otherwise agreed, a principal who has contracted to employ an agent has a duty to conduct himself so as not to harm the agent's reputation nor to make it impossible for the agent, consistently with his reasonable self-respect or personal safety, to continue in the employment." We can find no Washington court that has adopted either version of this provision of the Restatement or recognized that any breach by a principal of a duty of good faith gives the agent either an independent cause of action for such a breach or a legal defense to a claim of breach of fiduciary duty. Hancock offers no authority in Washington or other authority for the proposition that, even if Ardent breached such a duty, its breach would have excused Hancock's breach of his fiduciary duty to Ardent. Hancock's proposed instruction was not a correct statement of the law.

Because the trial court appropriately instructed the jury on the law, the court did not abuse its discretion.

2.

Hancock argues also that the trial court's rulings in limine prevented him from presenting his defense to the jury. As with a trial court's decision not to issue a jury

-14-

instruction, the granting or denying of a motion in limine is reviewed for an abuse of discretion. Fenimore v. Donald M. Drake Constr. Co., 87 Wn.2d 85, 91, 549 P.2d 483 (1976).

First, Hancock misconstrues the trial court's rulings in limine. For instance, the trial court granted Ardent's seventh motion in limine preventing Hancock from referring to the Rules of Professional Conduct (RPCs). Hancock argues that in granting the motion the trial court prevented him from explaining the reason that he acted as he did in October 2019. But the trial court specifically explained:

> I'm persuaded that some of that is relevant. It's just for me it's a matter of the line. Because I'm not going to allow you to go too—so deep into that . . . the only entrance into this, Mr. Hancock, is did this attorney believe that there were violations that justified his conduct.

The trial court granted the motion in part, prohibiting testimony that Ardent violated the RPCs.

The trial court also granted Ardent's eighth motion in limine, prohibiting Hancock from asserting that it was improper for Weinstein to participate in law firms or businesses other than Ardent. Hancock alleges the trial court's decision granting the motion prevented him from explaining the basis of his concerns about Weinstein's management of Ardent client representation. But the trial court explained that the ruling did not implicate testimony that there was an agreement between Hancock and George about Weinstein's involvement in Ardent and why there was an agreement between them.

Finally, the trial court granted Ardent's tenth motion in limine, prohibiting Hancock from asserting that Ardent had engaged in improper conduct with respect to its clients.

Hancock asserts that by granting the motion the trial court prohibited Hancock from proving evidence of the claims raised by Dr. Hudson that supported his initial case. Again, this is not what the trial court did. Nor did Hancock argue this below. The trial court granted the motion "insofar as there has been a specific assertion that . . . the thing that would be discussed pursuant to 10 is the Orange Lake Country Club settlement."[8] The trial court explained that Hancock's argument that this settlement bolstered his position that he was "on to something" would be an improper inference because of how many factors go into settlement. The trial court emphasized that "[a]ll the other stuff in terms of how it peaked your concern and the concerns that you had and why, that is not implicated by this ruling."[9]

The trial court appropriately limited the evidence before the jury to the facts and issues central to this case. The trial court did not abuse its discretion.

D.

In his fifth assignment of error, Hancock argues that the trial court erred in releasing Ardent from its burden of proving damages. This is so, Hancock contends, because a plaintiff seeking damages must prove damages with reasonable certainty to recover monetary relief. Because Ardent sought injunctive relief and not monetary damages, we disagree.

---

[8] This was a separate case against Reed Hein & Associates that Hancock asserted triggered his concerns with Ardent's practices.

[9] Similarly, the trial court granted motion in limine 4, prohibiting mention of a case against Reed Hein & Associates filed after the events in this case. And the trial court granted motion in limine 3 after Hancock conceded that pleadings and orders from other cases were not relevant to his case-in-chief. Hancock's argument that these rulings prevented him from expressing his concerns about Reed Hein & Associates has no merit as he presented his theory of the case while the trial court appropriately limited the evidence before the jury to prevent confusion.

"Whether a party is entitled to equitable relief 'is in large part a matter addressed to the discretion of the trial court, with discretion to be exercised in light of the facts and circumstances of the particular case.'" Borton & Sons, Inc. v. Burbank Props., LLC, 9 Wn. App. 2d 599, 607, 444 P.3d 1201 (2019) (citing Heckman Motors, Inc. v. Gunn, 73 Wn. App. 84, 88, 867 P.2d 683 (1994)). The trial court has discretion to provide injunctive relief if a party demonstrates that (1) it has a clear legal or equitable right, (2) it has a well-grounded fear of immediate invasion of that right, and (3) the acts it complains of are either resulting in or will result in actual and substantial injury. Kucera v. Dep't of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000). Under the UTSA, actual or threatened misappropriation may be enjoined. RCW 19.108.020(1). "In addition to or in lieu of injunctive relief, a complainant may recover damages." RCW 19.108.030(1) (emphasis added).

Ardent sought injunctive relief against Hancock, Ardent did not seek monetary damages. The trial court appropriately instructed the jury that to prevail on its breach of fiduciary duty claim, Ardent had to prove that it was injured by Hancock's breach. After the jury issued its verdict against Hancock for misappropriation and breach of fiduciary duty, Ardent moved for injunctive relief, which the trial court granted. The trial court found that Ardent had a right to protection from misuse of confidential information Hancock acquired as an employee, that Hancock had misused Ardent's confidential information, and that Ardent sustained actual and substantial injury from Hancock's misuse of Ardent's confidential information. While Hancock offers no legal authority for the proposition that a party cannot prevail on a claim for breach of fiduciary duty by proving "injury" rather than "damages," there are many cases that use injury in

-17-

describing the elements of the claim.  See Micro Enhancement Int'l, 110 Wn. App. at 433-34; Miller v. U.S. Bank of Wash., N.A., 72 Wn. App. 416, 426, 865 P.2d 536 (1994). And a party seeking injunctive relief must demonstrate the acts it complains of are either resulting in or will result in actual and substantial injury.  Kucera, 140 Wn.2d at 209. Ardent met that burden.

The trial court appropriately exercised its discretion in granting injunctive relief.

E.

In his sixth assignment of error, Hancock argues that the trial court erred by granting Ardent's day of trial motion to amend its complaint to dismiss some of its claims.  We disagree.

A trial court's decision on leave to amend is reviewed for abuse of discretion.  Ino Ino, Inc. v. City of Bellevue, 132 Wn.2d 103, 142, 937 P.2d 154 (1997).  Under CR 15(a), once a responsive pleading has been filed, a party may only amend it's pleading by leave of the court, and leave shall be freely given if justice so requires.  When dismissal of a claim is intended, rather than dismissal of an entire action, amendment under CR 15(a) is technically the proper procedure.  Orsi v. Aetna Ins. Co., 41 Wn. App. 233, 246 n.8, 703 P.2d 1053 (1985).  Leave to amend should be freely given unless it would result in prejudice to the nonmoving party.  Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987).

Ardent's original third-party complaint against Hancock asserted six causes of action.  Before trial, Ardent gave notice to the court and Hancock that it was electing not to pursue certain claims.  The notice stated that Ardent would not be pursuing claims for indemnification, tortious interference, defamation, and invasion of privacy, nor would

Ardent be seeking monetary damages. This left the claim for misappropriation of trade secrets and breach of fiduciary duty. After, Hancock objected to the notice and Ardent submitted a proposed order voluntarily dismissing the claims. Hancock refused to agree. This occurred six months before trial.

The trial court subsequently granted Ardent's motion to amend. Ardent filed its amended complaint the same day.

The trial court did not abuse its discretion in granting Ardent's motion to amend. First, Ardent dismissed several claims. While Hancock asserts that a party cannot dismiss a single claim from a multi-claim complaint, in the case he cites the party moved to amend to eliminate the basis for federal question jurisdiction using Federal Rule of Civil Procedure 41 and the court explained that Rule 15(a) is the appropriate mechanism. Ethridge v. Harbor House Rest., 861 F.2d 1389, 1392 (9th Cir. 1988). Here, the court ruled under CR 15(a) not CR 41. Second, Hancock cannot show prejudice. He had six months' notice that Ardent would not be pursuing four of its six original claims against him.

F.

Hancock finally contends that the trial court erred in awarding attorney fees to Ardent and that the fees awarded were unreasonable. We agree.

This court reviews the basis for an award of attorney fees de novo and the reasonableness of the amount of an award for abuse of discretion. Tradewell Grp., Inc. v. Mavis, 71 Wn. App. 120, 126-27, 857 P.2d 1053 (1993).

Washington courts follow the "American Rule," where each party pays its own attorney fees unless an award is authorized by contract, statute, or a recognized ground

-19-

in equity.  Dave Johnson Ins., Inc. v. Wright, 167 Wn. App. 758, 783, 275 P.3d 339 (2012).  Ardent argues that attorney fees were appropriate based on a recognized ground in equity based on Hsu Ying Li v. Tang, 87 Wn.2d 796, 797-98, 557 P.2d 342 (1976).  We disagree.

In Hsu Ying Li, the Supreme Court considered the equitable exceptions to the no-attorney-fees rule in a case dissolving a partnership where one partner negligently breached a fiduciary duty.  87 Wn.2d at 798, 801.  The court first explained that a court may award attorney fees if the losing party's conduct constitutes bad faith or wantonness.  Hsu Ying Li, 87 Wn.2d at 798.  This exception did not apply, however, because the trial court did not find bad faith on the part of the respondent.  Hsu Ying Li, 87 Wn.2d at 798.  Next, the Supreme Court acknowledged that attorney fees may be awarded under the common fund exception when the lawsuit preserves and protects a common fund and benefits others aside from the litigant.  Hsu Ying Li, 87 Wn.2d at 798.  But in Hsu Ying Li, while the suit preserved and protected a common fund and partnership assets, the suit only benefited the litigant, thus the exception did not apply.  87 Wn.2d at 798-99.  The Supreme Court awarded attorney fees because "the power to award attorney fees 'springs from our inherent equitable powers, (and) we are at liberty to set the boundaries of the exercise of that power.'"  Hsu Ying Li, 87 Wn.2d at 799 (quoting Weiss v. Bruno, 83 Wn.2d 911, 914, 523 P.2d 915 (1974)).  Finding that the respondent's negligent breach of his fiduciary duty was tantamount to constructive fraud and that partners should share the expense of a lawsuit when one partner breaches a fiduciary duty, the court held that attorney fees were appropriate.  Hsu Ying Li, 87 Wn.2d at 800-01.

Following the decision in Hsu Ying Li, Washington courts have limited and clarified its holding. In ASARCO, Inc. v. Air Quality Coal., 92 Wn.2d 685, 716, 601 P.2d 501 (1979), the Supreme Court explained that the award of attorney fees in Hsu Ying Li "stemmed from the prevailing party having preserved partnership assets." Then, in Shoemake v. Ferrer, 143 Wn. App. 819, 831, 182 P.3d 992 (2008), this court explained that Hsu Ying Li applied a well-established equitable basis for the award of attorney fees: the prosecution of a successful action to preserve a common fund. The Shoemake court reversed an attorney fees award based on an attorney's breach of fiduciary duty. Shoemake, 143 Wn. App. at 832. Finally, this court in Greenbank Beach and Boat Club, Inc. v. Bunney, 168 Wn. App. 517, 525, 280 P.3d 1133 (2012), held "Hsu Ying Li is properly viewed as creating a limited equitable basis for an award of fees in cases with similar facts. It is not an open-ended warrant for the invocation of inherent power to sanction a party for prelitigation misconduct."

First, while the trial court found that Hancock's breach of fiduciary duty was "willful," the trial court did not find he acted in bad faith or wantonly. Second, there is no common fund so the common fund exception does not apply. Third, this case is not similar to the facts in Hsu Ying Li. This is not the dissolution of a partnership nor were there partnership assets to preserve.

Thus, none of the recognized grounds in equity support an award of attorney fees. We conclude that the trial court erred by awarding Ardent attorney fees and reverse the attorney fee award. Because we reverse, we do not address whether the award was reasonable.

III.

We next address Ardent's claims on cross appeal.

A.

On the first day of trial, Hancock filed a written notice of voluntary dismissal dismissing his remaining counterclaims. The trial court dismissed Hancock's claims without prejudice. Ardent argues that the trial court erred by declining to dismiss claims not pursued by Hancock at trial with prejudice. We agree that the compulsory counterclaims against Ardent should have been dismissed with prejudice. Because claims against Weinstein and George were not compulsory, however, dismissal without prejudice was appropriate.

We review an order on a motion to dismiss for an abuse of discretion. McCandlish Elec., Inc. v. Will Constr. Co., 107 Wn. App. 85, 93, 25 P.3d 1057 (2001).

Ardent first argues that Hancock's remaining eight claims[10] should have been dismissed with prejudice because they could not be dismissed as a matter of right after Ardent filed a responsive pleading. Under CR 41(c), when a defendant counterclaimant seeks to voluntarily dismiss a counterclaim as a matter of right, the defendant must act before a responsive pleading is served. As discussed in Rainier Nat'l Bank v. McCracken, 26 Wn. App. 498, 507-08, 615 P.2d 469 (1980), where, as here, the third-party plaintiff has filed a responsive pleading to the counterclaim, dismissal of counterclaims is subject to the discretion of the trial court and is not a matter of right. Thus, the trial court had discretion to dismiss Hancock's counterclaims.

_____

[10] Hancock's first answer to Ardent's third-party complaint asserted four counterclaims. Hancock later amended his answer and asserted 11 counterclaims. Partial summary judgment was granted dismissing three of Hancock's counterclaims with prejudice.

Ardent next asserts that the claims should have been dismissed with prejudice because they were compulsory counterclaims. Hancock concedes that his counterclaims against Ardent were compulsory and agrees those should be dismissed with prejudice.

But Hancock argues that he had separate claims against Weinstein and George that were not compulsory. We agree with Hancock. A compulsory counterclaim arises out of the "'same transaction or occurrence'" as the original claim if the two are logically related. Chew v. Lord, 143 Wn. App. 807, 813, 181 P.3d 25 (2008) (quoting CR 13(a)). According to Washington Practice, a party does not have to assert a counterclaim against someone who is not yet a party to the action, even if the counterclaim might arise out of the same transaction or occurrence. 3A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE CR 13 author's cmts. at 3 (7th ed. 2022); Nancy's Prod., Inc. v. Fred Meyer, Inc., 61 Wn. App. 645, 811 P.2d 250 (1991). In Nancy's Product, the court held that an opposing party for purposes of CR 13(a) is one who asserts a claim against the prospective counterclaimant in the first instance. 61 Wn. App. at 650.

Here, the initial complaint was filed by Dr. Karen Hudson against Ardent Law Group, PLLC, Colin George, and William Weinstein. On November 25, 2019, Ardent then filed a third-party complaint against Hancock with only Ardent and Hancock as parties. On December 16, 2019, Hancock answered Ardent's complaint and asserted counter claims against Ardent, Weinstein, and George.

Under CR 13(a), only Ardent and Hancock were opposing parties in the third-party complaint. In contrast, Weinstein and George had not asserted claims against Hancock and, thus, were not Hancock's opposing parties in the third-party complaint.

Thus, any claims against Ardent were compulsory counterclaims and as such should have been dismissed with prejudice.

As a result, we remand to the trial court to dismiss the claims against Ardent with prejudice. But because they were not opposing parties, claims against Weinstein and George were not compulsory and the trial court did not err in dismissing those claims without prejudice.

B.

During discovery, Hancock deposed Jeremy Wang, an Ardent attorney. After Wang refused to answer some questions, Hancock moved to compel testimony and requested attorney fees. The trial court granted Hancock's motion and ordered Ardent to pay reasonable expenses Hancock incurred. The court awarded $6,000 for attorney fees and $40 for costs. Ardent argues that the trial court erred by awarding attorney fees to Hancock on his motion to compel discovery. We disagree.

Under CR 37(a)(4), if a motion to compel discovery is granted, the court must require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses, including attorney fees, unless the court finds that the opposition was substantially justified.

Ardent argues that the order compelling discovery constituted error because Wang's testimony was protected by attorney-client privilege. Because the trial court's order compelled Wang to testify about his communications with Ardent's attorney in this matter, about matters within the scope of Wang's duties, we agree. Attorney-client privilege applies to communications by any corporate employee, regardless of position, when the communications concern matters within the scope of the employee's

corporate duties and the employee knows that the information is being furnished to enable the attorney to provide legal advice to the corporation. Upjohn v. United States, 449 U.S. 383, 394, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981).

But Wang refused to answer questions about communications with other employees of Ardent. Thus, the trial court did not err in granting Hancock's motion to compel testimony on these other communications. Nor did the trial court err in awarding Hancock his attorney fees and costs.

C.

Ardent argues that the trial court erred in failing to award statutory damages and attorney fees incurred defending against Hancock's defamation claim under RCW 4.24.510. We disagree.

Under RCW 4.24.510, a person who communicates a complaint or information to any branch of government is immune from civil liability for claims based on the communication. Further, a person prevailing upon the defense has a right to recover expenses and reasonable attorney fees in establishing the defense and statutory damages. RCW 4.24.510.

A person may be considered the prevailing party if the plaintiff recovers nothing. RCW 4.84.270. "But a defendant is not deemed the prevailing party when the plaintiff recovers nothing if the action is dismissed without prejudice as a result of the plaintiff's voluntary nonsuit." Elliott Bay Adjustment Co., Inc. v. Dacumos, 200 Wn. App. 208, 213, 401 P.3d 473 (2017) (emphasis added).

Hancock asserted a claim for defamation against Weinstein based on statements Weinstein made to the Seattle Police Department. Weinstein asserted statutory

-25-

immunity as a defense. When Hancock voluntarily dismissed all of his claims on the first day of trial, the defamation claim was dismissed without prejudice. The trial court denied Ardent's request for statutory damages under RCW 4.24.510 explaining that the statute "very clearly contemplates . . . that if somebody prevails against that type of accusation" there is authorization for the award, but here it would not be appropriate for the court to grant that relief.

The trial court did not err in declining to award statutory damages and attorney fees under RCW 4.24.510.

IV.

Ardent requests attorney fees under RAP 18.1 for defending this appeal. A party may recover fees on appeal if the party was entitled to recover fees in the trial court. Landberg v. Carlson, 108 Wn. App. 749, 758, 33 P.3d 406 (2001). Ardent first argues that it is entitled to attorney fees based on its breach of fiduciary duty claim. As discussed above, breach of a fiduciary duty is not a recognized ground in equity for recovering attorney fees. Ardent also argues that it is entitled to fees based on Hancock's defamation claim. Because that claim was properly dismissed without prejudice, Ardent is not entitled to attorney fees based on defending against that claim. As a result, Ardent is not entitled to attorney fees and costs incurred in this appeal.

We reverse the trial court's award of attorney fees to Ardent, reverse the dismissal without prejudice of Hancock's claims against Ardent and remand for the trial court to dismiss the claims with prejudice. We otherwise affirm.

_Mann, J._

WE CONCUR:

_Coburn, J._          _Andrus, J.P.T._